591 So.2d 644 (1991)
B & B STEEL ERECTORS and Claims Center, Appellants,
v.
William Michael BURNSED, Appellee.
No. 91-528.
District Court of Appeal of Florida, First District.
December 3, 1991.
Robert B. Bennett and Thomas H. McDonald, of Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, for appellants.
Michael Broussard and John T. Willett, of De Ciccio & Broussard, P.A., Orlando, for appellee.
SHIVERS, Judge.
The employer/carrier (E/C) in this workers' compensation case appeal an order of the judge of compensation claims (JCC) awarding benefits to appellee, William M. Burnsed. We affirm the award for the reasons set out below.
On August 15, 1990, the claimant fell from a three-story scaffold while working for appellant, B & B Steel Erectors, sustaining severe injuries which eventually resulted in paraplegia. At the January 1991 hearing on the issue of coverage, it was claimant's position that he was entitled to coverage pursuant to section 440.02(13)(d)(4), Florida Statutes (Supp. 1990) or, alternatively, that if coverage were not statutorily mandated, the E/C were estopped from denying coverage on the basis of certain representations made to the employer. The E/C took the position that the entire 1990 Workers' Compensation Act was unconstitutional or, in the alternative, that the claimant could not establish the necessary elements of estoppel.
The evidence presented at the hearing established that the claimant, his father (Lonnie Burnsed, Jr.), and his brother (Lonnie Burnsed III), were the owners and corporate officers of a construction company known as B & B Steel Erectors, which built water and sewage treatment plants and various types of water tanks. In addition to their roles as corporate officers, claimant worked as field supervisor and filled in for absent workers when necessary, his father ran one of the company's construction crews, and his brother managed the business.
At some point in 1989, Burnsed III became concerned about the high cost of B & B's workers' compensation insurance, and met with his agent, Gary Burkey, to determine *645 whether the cost could be reduced. Burkey suggested that the Burnseds exempt themselves from coverage as corporate officers, and "fill the gap" with medical and disability insurance. The Burnseds followed Burkey's suggestion, keeping a health insurance policy they already had, and adding a disability policy. Certificates of exemption were filed on November 27, 1989 and February 16, 1990, and the carrier wrote to B & B on May 10, 1990, advising that if any of the three officers wanted to be covered under workers' compensation insurance in the future, to contact them so they could send the proper forms to be signed and filed.
On July 6, 1990, the Burnseds received a form letter from Burkey which stated:
Dear Sir:
The 1990 session of the Florida Legislature made some very important changes to the Workers Compensation Law. The primary effect is to require everyone in the construction industry to be covered by Workers Compensation.
... .
IF YOU ARE A CORPORATION
"No officer of a corporation engaged in the construction industry shall be exempt from coverage."
This means that as of July 1, 1990 all corporate officers who may have exempted themselves from the benefits of Workers Compensation will automatically receive them again and will be unable to reject them thereafter. The premium charge of these officers will be based upon their actual payroll, subject to a minimum of $200 per week and a maximum of $1,100 per week.
Please call our office so we can give you an estimate of the additional premium that will be generated from this new law.
No one from Burkey's office ever contacted the Burnseds following the July 6, 1990 letter, and the Burnseds never contacted Burkey, assuming that the carrier would bill B & B for the increased coverage. According to Burkey, however, B & B's workers' compensation carrier considered the amendments to the 1990 law to be "on hold," and did not increase premiums to reflect coverage of the corporate officers. Burnsed III testified that the carrier had always calculated B & B's workers' compensation premium based on the company's payroll, giving him an estimated monthly payment and adjusting the amount after a periodic audit. Therefore, when B & B's August billing failed to reflect an increase in the premium, Burnsed III was unconcerned, expecting the premium to increase after the audit. Burnsed III testified that it was not until after claimant's accident that he learned that the Burnseds were, in fact, not covered. He also learned after the accident that claimant was not covered under B & B's health insurance policy, as it contained an exclusion for on-the-job injuries. The disability policy paid claimant $421 per week following the accident.
On the date of the accident, claimant was working both as crew supervisor and as a welder, replacing an employee who had not shown up for work that day, at a project which involved building a 300,000 gallon water tank for a new housing project in Ormond Beach. As a result of his fall, he sustained a severed spinal cord and a neurogenic bowel and bladder, and was left wheelchair-confined and totally disabled.
On February 1, 1991, the JCC entered an order finding that B & B's corporate officers were covered as of July 1, 1990, pursuant to section 440.02(13)(d)(4), Florida Statutes (Supp. 1990) and, alternatively, that the carrier was estopped from denying coverage by virtue of Burnsed III's reliance on Burkey's July 6, 1990 form letter. The E/C appeal the finding of coverage, raising two arguments: (1) that section 440.02(13)(d)(4), Florida Statutes (1990) violates the Equal Protection clauses of the Florida and federal Constitutions, since there is no rational basis for the section's disparate treatment of corporate officers in the construction industry; and (2) that the JCC erred in finding the carrier to have been estopped from denying coverage.
Section 440.02(12)(b), Florida Statutes (1989), provided, in part, that "any officer *646 of a corporation may elect to be exempt from coverage under this chapter by filing written certification of the election with the division as provided in s. 440.05." Section 440.02(12)(d)(4) of the 1989 Act provided that the term "employee" did not include:
Any officer of a corporation who elects to be exempt from coverage under this chapter.
In 1990, the above section was amended, as section 440.02(13)(d)(4), to provide that the term "employee" did not include:
Any officer of a corporation who elects to be exempt from coverage under this chapter; however, no officer of a corporation engaged in the construction industry shall be exempted from coverage under this chapter. (e.s.)
The 1990 amendment to the Workers' Compensation Act (Chapter 90-201) became effective on July 1, 1990. On July 6, 1990, the employer in the instant case received the form letter from agent Burkey advising it of the changes in the Workers' Compensation law, and informing it that all officers of corporations engaged in the construction industry who had previously exempted themselves from workers' compensation benefits would automatically receive them again as of July 1, 1990. Claimant was injured on August 15, 1990.
On December 5, 1990, the Second Judicial Circuit Court ruled in Scanlon v. Martinez, no. 90-3137 (Fla. 2d Cir.Ct. December 5, 1990), that Chapter 90-201 contained two separate subjects (workers' compensation and international trade) and violated the single subject requirement of the Florida Constitution. Consequently, the Legislature convened in a special session on January 22, 1991, and accomplished two objectives with regard to Chapter 90-201. First, it separated the workers' compensation and international trade provisions into two distinct bills, and reenacted both into law. Chapter 91-1, which reenacted the workers' compensation portion, expressly provided that the law "shall operate retroactively to July 1, 1990," and that "in the event that such retroactive application is held by a court of last resort to be unconstitutional, the act shall apply prospectively from the date the act becomes a law." Chapter 91-1 reenacted the workers' compensation portion of Chapter 90-201, but did not amend section 440.02(13)(d)(4). Second, the Legislature enacted Chapter 91-2, which both reenacted and amended certain provisions of the workers' compensation law. Specifically, section 440.02(13)(d)(4) was changed back to its pre-1990 form, to provide that the term "employee" did not include "any officer of a corporation who elects to be exempt from the provisions of this chapter." Chapter 91-2 also added section 440.02(13)(d)(5), which provided that the term "employee" did not include:
A sole proprietor or officer of a corporation who actively engages in the construction industry, and a partner in a partnership that is actively engaged in the construction industry, who elects to be exempt from the provisions of this chapter. Such sole proprietor, officer, or partner is not an employee for any reason until the notice of revocation of election filed pursuant to s. 440.05 is effective.
In addition, Chapter 91-2 added section 440.02(13)(b)(2) and (3), which provided:
2. As to officers of a corporation who are actively engaged in the construction industry, no more than three officers may elect to be exempt from the provisions of this chapter by filing written notice of the election with the division as provided in s. 440.05.
3. An officer of a corporation who elects to be exempt from the provisions of this chapter by filing a written notice of the election with the division as provided in s. 440.05 is not an employee.
Unlike Chapter 91-1, however, Chapter 91-2 did not contain a specific provision that it would operate retroactively, but stated that it would "take effect upon becoming a law."
On June 6, 1991, the Florida Supreme Court released Martinez v. Scanlon, 582 So.2d 1167 (Fla. 1991), in which it affirmed the ruling by the Second Judicial Circuit that Chapter 90-201 violated the single subject requirement. The court also held: *647 (1) that the 1991 reenactment of the Workers' Compensation Act in Chapter 91-1 clearly cured the single subject violation, leaving the court in the position of having to rule on the constitutionality of a statute "that now no longer exists, but whose provisions have been reenacted and made retroactive to the effective date of the challenged statute" Id. at 1173; (2) that the 1991 Act was not properly before the court, leaving the court unable to make a binding ruling on its effect; (3) that the court would nevertheless rule on the constitutionality of the 1990 Act, in case "a court were to find that the 1991 act could not be constitutionally applied because of the reenacted provisions" Id. at 1173; (4) that the effective date of voiding Chapter 90-201 would be the date of the court's opinion, and the decision would operate prospectively only; and (5) that the court's ruling would not "preclude any party with a specific controversy from raising any constitutional issue as applied to that party." Martinez v. Scanlon, Id. at 1176. The supreme court's opinion did not mention the enactment of Chapter 91-2.
From the above chronology, it clearly appears that the law in effect at the time of the claimant's August 15, 1990 accident was Chapter 91-1, which was made to apply retroactively to July 1, 1990, and which provided that officers of corporations engaged in the construction industry could not exempt themselves from coverage. Both appellant and appellee base their arguments on appeal on the assumption that Chapter 91-2, which amended the law to provide that officers of corporations engaged in the construction business could exempt themselves from coverage, was also enacted retroactively to July 1, 1990. Chapter 91-2, however, as stated above, does not contain such a provision, and appears not to have taken effect until after the January 21, 1991 special session convened. Assuming, then, that the law in effect at the time of claimant's accident did not allow his exemption, we must address the E/C's argument that the provision violated the Equal Protection clause. After careful analysis of applicable case law, we find that the statute does not violate equal protection.
Initially, we note that workers' compensation judges do not have the power to determine the constitutionality of a portion of the Workers' Compensation Act, and that such issues may be raised for the first time on appeal, without having been preserved below. Sasso v. Ram Property Management, 431 So.2d 204 (Fla. 1st DCA 1983). The E/C in the instant case, therefore, have standing to raise this issue on appeal, since the record clearly indicates that they will be injuriously affected by the section complained of. Further, this court held, in Sasso, that "[c]ases involving judicial enforcement of a discriminating legislative enactment so clearly involves state action that the courts routinely ignore analysis of the existence of state action." Id. at 211.
Second, in reviewing general social and economic legislation which does not employ a suspect classification or impinge on a fundamental right, courts apply the "rational relationship" test. Rotunda, Nowak, and Young, Treatise on Constitutional Law, Substance, and Procedure section 18.3. As this court explained in Sasso, supra, the "some reasonable basis" standard is appropriate when employing the rational basis test. Under this standard, the courts uphold classifications so long as there appears to be any plausible reason for the Legislature's action, asking only whether it is conceivable that the classification bears a rational relationship to an end of government which is not prohibited by the government. It is "constitutionally irrelevant" whether the plausible reason in fact supports the legislative decision, because the courts have "never insisted that a legislative body articulate its reasons for enacting the statute." United States Railroad Retirement Board v. Fritz, 449 U.S. 166, 179, 101 S.Ct. 453, 461, 66 L.Ed.2d 368 (1980). This standard is "highly deferential" toward the State's actions, and the burden is on the party challenging the law to establish that the State's action is without any rational basis. Sasso, supra, at 216. See also The Florida High School *648 Activity Association, Inc. v. Thomas, 434 So.2d 306 (Fla. 1983).
Applying the "some reasonable basis" standard to the instant case, we find that section 440.02(13)(d)(4), Florida Statutes (Supp. 1990) does not violate the Equal Protection clause. In its initial brief, the appellant cites to the 1990 annual report of the Florida Workers' Compensation Oversight Board, as stating:
[A]s workers' compensation rates have increased, many schemes for premium avoidance have been invented. Some employers not only defraud the carrier/fund but also possibly leave employees unknowingly exposed to risk without any coverage. Some employers, with the aid of unscrupulous agents, under report or misclassify risks to effectively reduce premiums. Some carriers/funds realize that these abuses are taking place but refuse to remedy the situation by tighter underwriting and enforcement.
Appellant then goes on to state that the purpose of section 440.02(13)(d)(4), Florida Statutes (Supp. 1990) was to "stop such fraudulent conduct and further insure proper premiums are being paid," and to state that the Oversight Board determined in its report that it could remedy part of the problem by "going after" the construction industry. Appellant, whose burden it is to show that the statute is without any rational basis, has therefore supplied the court with at least one reasonable basis for the statute's classification. Further, we find it at least plausible that a disproportionately large amount of fraudulent underreporting and misclassification of risk has occurred within the construction business, where corporate officers are more likely to work in the field, thereby exposing themselves to a higher risk of injury than corporate officers in other types of businesses. Because there are plausible reasons for the Legislature's action, we "inquire no further," and uphold the constitutionality of the section. The JCC's order awarding benefits to the claimant is therefore affirmed, on the basis of statutory coverage, and it is unnecessary for us to address the issue of estoppel.
AFFIRMED.
ERVIN and WIGGINTON, JJ., concur.