SHIVERS, Judge.
Curtis-Hale, Inc. (Curtis-Hale), its self-insured fund, and its servicing agent appeal the Order of the Judge of Compensation Claims (JCC) finding Appellee Aetna Casualty and Surety Company (Aetna) had properly cancelled its worker’s compensation (WC) policy covering Appellee James Geltz, d/b/a Carpentry Services. The claimant was injured on September 12, 1988; within the course and scope of his employment with Geltz. Geltz was a subcontractor for Curtis-Hale, the general contractor. The issue on appeal is whether competent substantial evidence (CSE) supports the finding that Geltz no longer had *559 WC coverage with Aetna at the time of Claimant’s accident, with the result that Appellants were required to provide WC benefits to Claimant, their statutory employee. See section 440.10(1), Florida Statutes (1987); Atlantic Masonry v. Miller Construction, 558 So.2d 433, 435 & n. 2 (Fla. 1st DCA 1990). We affirm the Order.
In August 1987, in response to a promotional mail-out, Geltz contacted Anthony Brooks, of the Brooks-Starling-Ruiz Agency (Brooks-Starling), to obtain WC coverage. CSE supports the finding that Geltz purchased coverage with an effective policy period of August 27,1987, to August 27, 1988. Geltz testified that, based on his discussions with Brooks in August 1987, he thought the duration of the policy was “a year.” Thus, in the absence of a renewal by the insured, the policy would ordinarily have terminated in August 1988.
Brooks-Starling procured WC coverage for Geltz by going through the assigned risk pool, which in Florida is handled by the South Atlantic Council on Compensation Insurance (SACCI). Aetna is the carrier that ultimately wrote out the policy for Geltz. Debbie Skiados, of Aetna’s WC assigned risk unit, testified that the insurance agent procuring the policy is the agent of the applicant/employer, not of the carrier. Her testimony indicates that Brooks had no authority to bind Aetna. Nothing in the record indicates Geltz ever contacted Aetna with the intent to renew the one-year policy. Geltz testified that he thought he would receive something in the mail around the renewal date, which he described as a “pretty busy” time for him, and that he “kind of relied on [Brooks] for some guidance.”
Problems arose from dishonored checks and non-payment of the premiums for Geltz’s policy. Aetna issued a Notice of Termination dated November 25, 1987, terminating the policy as of December 25, 1987. Upon replacement of the dishonored check, however, Aetna issued a Reinstatement Notice, reinstating the policy. Geltz had entered a Premium Finance Agreement initially with Premium Assignment Corporation (Premium Assignment) and later with Capitol Premium Plan, Inc. (Capitol Premium), but he testified he “had no idea” of the circumstances underlying the change from one premium financing group to the other.
On February 16, 1988, Capitol Premium sent a letter to Geltz regarding an attempt to cancel his insurance policy, and instructing him about the amount and form of payment that would be necessary to avoid a cancellation. Geltz testified that he recalled receiving that letter, as well as another cancellation notice from Capitol Premium, with a February 19, 1988, postmark, but he did not recall doing anything in response to those letters. A Notice of Cancellation from Capitol Premium to Geltz, dated March 2, 1988, specifically notified him that “the policy described above is cancelled for non-payment of an installment” in accordance with the prior agreement incorporating a power of attorney.
Curtis-Hale asserts that it had a business practice of requiring subcontractors to submit a Certificate of Insurance at the time of signing the subcontractual agreement. That was to ensure that subcontractors insured their own risks of loss for accidents incurred by employees of the subcontractors. See section 440.10(1), Florida Statutes (1987). In March 1988, five months before Geltz started work on a project for Curtis-Hale, Curtis-Hale requested a Certificate of Insurance. That certificate, issued by Brooks-Starling on March 28, 1988, showed the effective date of Geltz’s policy as August 27, 1987, and the policy expiration date as August 27, 1989, rather than 1988. Under the heading “Cancellation,” the certificate states “should any of the above described policies be cancelled before the expiration date thereof, the issuing company will endeavor to mail 10 days written notice to the certificate holder named to the left [Curtis-Hale], but failure to mail such notice shall impose no obligation or liability of any kind upon the company, its agents or representatives.”
Ultimately, a request was made for Geltz’s policy to be cancelled because of a continuing failure to pay premium install *560 ments to Capitol Premium. The ensuing events relate directly to the issue of which carrier was providing coverage at the time of the accident and, accordingly, should bear responsibility for payment of Claimant’s benefits. Aetna issued a Notice of Termination, dated April 12, 1988, with an April 14, 1988, postmark, stating that the August 27, 1987, policy would be terminated as of May 12, 1988. Because the cancellation date was not 30 days or more from the postmarked date, the notice failed to meet the requirements set forth in the statutes and rule governing WC policy cancellation. Employers Self Insurers Fund v. Torres, 565 So.2d 895 (Fla. 1st DCA 1990); Young v. Travelers Insur. Co., 496 So.2d 232 (Fla. 1st DCA 1986); Peninsular Fire Insur. Co. v. King, 282 So.2d 672 (Fla. 1st DCA 1973).
Section 440.42(2), Florida Statutes (1987), provides: “No contract or policy of insurance issued by a carrier under this chapter shall expire or be canceled until at least 30 days have elapsed after a notice of cancellation has been sent to the [Division of Workers’ Compensation] and to the employer in accordance with the provisions of subsection 440.185(7).” That subsection requires that notice of such a policy cancellation or expiration be mailed to the Division in accordance with the Division’s rules. The rule implementing this procedure states that, “[e]xcept as hereinafter provided, a contract or insurance policy shall not be terminated until and unless 30 days have elapsed after notice of termination has been given to the Division and the employer” in accordance with section 440.-42(2). “When the notice of termination is sent by mail, the 30 days will be calculated from the 1st day following the date of mailing as evidenced by postmark.” Fla.Admin. Code Rule 38F-6.008(1).
The validity of the attempted cancellation and the effect of the improper notice on Geltz’s policy coverage are disputed by Appellants and Aetna. It is clear that the notice, postmarked April 14, sought termination on May 12, 1988, merely 28 days after mailing. Relying on our decision in Torres, Appellants’ position is that because of the failure to provide the statutory 30-day period, the termination notice was void, so that the Aetna policy remained in effect and Geltz was covered at the time of Claimant’s September 1988 injury.
In Torres, Employer applied to Employers Self Insurers Fund (ESIF) for WC insurance and to Florida Employers Safety Association (Safety Association) for membership on March 6,1987. The applications were accepted, but ESIF subsequently filed a termination notice due to Employer’s failure to pay dues to Safety Association. The notice was dated March 4, 1988, and postmarked March 7, 1988, but stated that termination of coverage would become effective April 4, 1988. After determining that the notice failed to provide the requisite time beyond the postmarked date, the Division stamped the notice as recorded on April 7, 1988, in compliance with the 30-day statutory requirement. Claimant was injured on April 8, 1988, and filed a claim for benefits against Employer. Employer took the position its coverage remained in effect on the accident date because the policy had been ineffectively and improperly denied and cancelled. The JCC determined that due to the failure of ESIF to give the 30 days’ notice of cancellation required pursuant to section 440.42(2), Florida Statutes (1987), Employer remained a Safety Association member and an insured through ESIF on the date of the accident. The issue on appeal was whether the notice of termination was void for non-compliance with the statutes and rule, or whether coverage continued and then terminated 30 days after the postmarked date.
Torres involved the same versions of the statutes and rule that apply to the case sub judice. We examined Peninsular Fire and Young and determined those decisions provide that “where the cancellation date stated in the notice is not 30 days or more from the date the notice is mailed, the notice is void” for failure to comply with section 440.42(2). See 565 So.2d at 396-97. Appellants suggested that Aetna’s termination notice was void for the same reasons stated in Torres, so that Geltz’s policy coverage remained effective on the date of Claimant’s accident. Aetna, on the other hand, *561 distinguished Torres in that the alleged effective date of termination was only one day prior to the industrial accident, so that no showing was made that the insured had reasonable time to discover the WC policy was cancelled.
We find Aetna’s position is convincing and comports with the legislative intent of sections 440.42(2) and 440.185(7) to provide reasonable notice to the insured party. The record indicates that, during the intervening four months from the effective cancellation date to the date of the accident, Geltz received sufficient notice of policy cancellation to satisfy the statutory requirements and to enable him to seek insurance coverage elsewhere. See Graves v. Iowa Mut. Insur. Co., 132 So.2d 393, 394-95 (Fla.1961) (sufficient notice conveys fact of cancellation to insured, and purpose of notice requirement is to enable insured to obtain other insurance to avoid subjection to risk without protection). Furthermore, interpreting its own rules and procedures, the Division determined the effective date of cancellation was May 14, 1988. Torres should not be construed to hold that coverage continues indefinitely after an insurer files a notice of termination that does not meet the 30-day statutory requirement. See Travelers Insur. Co. v. Nettles, 528 So.2d 1291 (Fla. 1st DCA 1988) (notification of policy cancellation after date of accident was ineffective, where statute disallowed expiration or cancellation until at least 30 days elapsed after proper notice was sent to Division and Employer).
The present circumstances are distinguishable from the facts in Peninsular Fire, in which the cancellation notice failed to provide at least 30 days’ notice, and the insurance company initially paid some of the medical bills following the claimant’s accident that occurred within the original one-year policy period. In the instant case, the accident occurred outside the original one-year policy period. See Security Insur. Co. of New Haven v. King, 124 So.2d 129 (Fla.1960) (where Employer and Insurer intended to enter into contract providing for coverage for a period ending prior to date of accident, but clerical error indicated policy remained effective at time of accident, failure to cancel certificate of insurance pursuant to statutory requirements did not extend the effective date beyond the original period of coverage).
In Young, unlike the case at bar, the insurance company furnished a cancellation notice that purported to terminate coverage immediately. The deputy commissioner recognized such an immediate cancellation did not comply with section 440.42(2), so coverage was deemed to have expired 30 days after the notice. In accordance with Peninsular Fire, we held the ineffective notice of cancellation maintained coverage “under the policy of the insurance.” Young, 496 So.2d at 233. Even under the original policy of insurance, which had an August 27, 1988, expiration date, Geltz would not have been covered for Claimant’s September accident.
Aetna effectively distinguished the above-mentioned decisions and relied on the Division’s interpretation of the statute and its own rules that allowed the effective termination date to be adjusted to May 14, 1988, or 30 days after the postmarked date. Jewel Willis, a supervisor of the Division’s WC compliance section that monitors cancellation of WC policies, testified that the Division discovered the stated termination date failed to comply with the requisite 30-day period. Pursuant to standard operating procedure, the Division corrected the notice so that the actual date of effective termination accorded with the statutory and regulatory requirements. This type of correction was routinely made on termination notices, so long as there was no new coverage. According to Willis, Geltz’s policy with Aetna was officially cancelled as of May 14,1988. Willis’ testimony concerning the Division’s regulations governing WC policy terminations is corroborated by that of Jack Green, a Division district supervisor charged with assuring that employers maintain required WC coverage.
At the hearing, it was suggested the Reinstatement Notice from Aetna dated April 12, 1988, and postmarked two days later, might have misled Geltz to believe the WC coverage remained in effect. The arrival of this Reinstatement Notice at *562 about the same time as the termination notice appears to have been entirely fortuitous, and CSE supports the JCC’s finding that this Reinstatement Notice clearly related to the prior termination for failure to have the initial premium deposit check honored. The face of the Reinstatement Notice indicates it pertains to “cancellation effective December 25, 1987,” rather than to the May 1988 termination.
We find CSE to support the finding that the Division’s procedures for personal notification of policyholders were sufficient to apprise Geltz of the cancellation of his policy. Those procedures call for a form letter to be sent to the insured to confirm non-coverage following a policy cancellation. If there is no reply to the form letter, the Division sends a field investigator to personally inform the insured that there is no coverage. The record supports the finding that Geltz was contacted during Summer 1988 by Thomas Dewey, of the Division’s compliance section, and in fact spoke with Dewey on two occasions and received his business card.
Geltz testified it was not until the November 1988 filing of Aetna’s Notice to Controvert that he became aware Aetna was denying coverage of Claimant’s September 12, 1988, accident. Other CSE belies that allegation, including Geltz’s own testimony that he received numerous letters of cancellation. The JCC noted that Aetna’s self-audit conducted in August 1988 provides additional indications that Geltz knew the Aetna coverage was no longer in effect. Two days after Claimant’s accident, Geltz obtained replacement WC coverage through the CIGNA Company.
The finding that Brooks acted solely as the agent of Geltz in applying for coverage through the assigned risk pool is amply supported by the record, and the facts on which Appellants rely in Acme Oil v. Vasatka, 465 So.2d 1314 (Fla. 1st DCA 1985), are distinguishable from the assigned risk pool in effect here. As Brooks was not Aetna’s agent, the actions of Brooks and Brooks-Starling and statements made by them to Geltz were not binding on Aetna. Specifically, the Certificate of Insurance dated March 28, 1988, and issued by Brooks, showing coverage for a two-year period from August 27, 1987, should have provided for an August 27,1988, expiration date, and the JCC correctly determined it contained an “obvious typographical error.” Appellants failed to demonstrate a basis for Aetna to be estopped from denying coverage.
As to the final issue of whether Geltz gave a power of attorney or other authorization to either Premium Assignment or Capitol Premium to cancel his WC coverage, we find the express language of the above-mentioned premium financing agreements evinces Geltz’s agreement to authorize a power of attorney.
AFFIRMED.
BOOTH, J., concurs.
WEBSTER, J., specially concurs, with opinion.