615 So.2d 187 (1993)
Darrell PERKINS, Appellant,
v.
A. PERKINS DRYWALL and Cigna Property and Casualty Companies, Appellees.
A. PERKINS DRYWALL, Appellant,
v.
CIGNA PROPERTY AND CASUALTY COMPANIES, Appellees.
Nos. 91-2931, 91-3250.
District Court of Appeal of Florida, First District.
March 2, 1993.
J. Michael Brennan, Fort Pierce, for Darrell Perkins, appellant/claimant.
George Murphy, Maitland, for Employer, A. Perkins Drywall.
Neil J. Hayes and Nancy Lehman, West Palm Beach, for appellee, Cigna Property and Cas. Companies.
MICKLE, Judge.
We have for consideration two cases consolidated on appeal. In Case No. 91-2931, Darrell Perkins ("Claimant") appealed the final order of the Judge of Compensation Claims ("JCC") holding that the workers' compensation ("W/C") policy that afforded coverage to his father's business, A. Perkins Drywall ("Employer"), did not cover Claimant on the date of his accident. In *188 Case No. 91-3250, the Employer challenged the JCC's determination in the same order that due to Employer's material misrepresentation that Claimant was a partner in A. Perkins Drywall, on which assertion CIGNA ("Carrier") relied to its detriment, the W/C policy did not cover Claimant on the date of injury and the Employer, but not the Carrier, is liable to pay W/C benefits to Claimant. Because the facts herein are completely covered within the provisions and remedies of Chapter 440, Florida Statutes, we hold the JCC erred, as a matter of law, in relying on section 627.409(1), Florida Statutes (1989), to prevent Claimant from recovering from the Carrier pursuant to the Employer's W/C insurance policy in effect on the date of the accident. We reverse.
By pretrial stipulation, all parties agreed Claimant had an accident on July 24, 1990, that arose out of and occurred within the course and scope of employment. Claimant worked as a drywall hanger for A. Perkins Drywall. He fell from a scaffold at a construction site and landed on his feet, crushing both heel bones. He remained temporarily totally disabled from that date to the time of hearing, June 19, 1991.
The Carrier had issued a W/C policy that afforded coverage to the business for the policy period from August 10, 1989, through August 10, 1990. Arvil Perkins, d/b/a A. Perkins Drywall, was the named insured. The policy was a renewal of a prior policy that Port St. Lucie Insurance Agency ("Agency") had produced and forwarded to the National Council on Compensation Insurance. By operation of the assigned risk pool, CIGNA was randomly selected to provide W/C coverage. The original annual "minimum premium" for Employer's 1989-90 policy amounted to $500, because the only parties shown on the policy were "clerical office employees," although the policy provided additionally for wallboard installation if any employees were hired for that task. As a result of a December 1989 audit performed on Employer's policy, the Carrier assessed a very substantially higher estimated policy premium of $10,922. Sara Bryant, an underwriting supervisor for the Carrier, testified that the reason for the increase in premium was "[t]o upgrade to coincide with a previous audit." The Carrier processed the endorsement increasing the premium on December 13, 1989.
A customer service representative of the Agency, Richard Warren Styles, testified that in a December 1989 letter, he informed Arvil Perkins that the audit would result in the much higher premium. Styles characterized the options available then as 1) getting together with the insured to assure that coverage continued by payment of the higher premium, or 2) exploring "some other alternatives as to how the coverage could best be written." At their meeting in January 1990, Arvil Perkins expressed a desire to reduce the policy premium, and he told Styles that most of the payroll producing the additional premium was the amount he had paid his son (Claimant) during the previous year. Styles told Mr. Perkins that the law permitted the exemption of owners, sole proprietors, and partners, and if the business was incorporated, it allowed the exemption of corporate officers. See section 440.02(12)(b), (12)(c), & (12)(d)(4), Florida Statutes (1989) (defining "employee" and permitting exemption from W/C coverage for certain classifications).
Based on information supplied by Arvil Perkins, Styles prepared and filed a Confidential Request for Information form, dated February 1, 1990, adding Darrell Perkins' name to that of his father, d/b/a Perkins Drywall. The form reflected a change in ownership from Arvil Perkins' sole proprietorship to a partnership in which father and son had interests of 65% and 35%, respectively. The stated purpose of the change was to exclude Claimant from W/C coverage and thereby reduce Employer's premium. Consistent with that intent, no notice of election to be covered under the W/C policy was filed on Claimant's behalf. A group medical insurance policy through the United Chambers Insurance Plan was found to be a reasonable replacement for the W/C coverage of Claimant because of the substantially lower costs of the substituted policy. In a *189 Notice of Denial, dated October 16, 1990, the reason given for denying W/C coverage of Claimant was section 440.02(12)(c) [Florida Statutes (1989)], which included in the definition of "employee" "a sole proprietor or a partner who devotes full time to the proprietorship or partnership and elects to be included in the definition of employee by filing notice thereof... ." (e.s.) No such election was filed on Claimant's behalf.
Regarding the issue of Claimant's actual classification at A. Perkins Drywall, the JCC found that Claimant had no ownership interest in the business and did not share in any of the company's profits. Claimant testified he did not contribute capital to the business and had no decision-making power, nor was he personally responsible for any business losses. At no time did Claimant enter a partnership agreement with his father regarding the business. Claimant's testimony, accepted as credible and true by the JCC, demonstrates he never considered himself to be a partner in his father's business. The JCC found that, on the date of the accident, Claimant was an "employee," as defined in section 440.02(13), Florida Statutes (Supp. 1990). The W/C policy was held to be in effect on the date of the accident.
However, the JCC held the policy covering Employer did not afford coverage to Claimant because "the Employer made a material misrepresentation as to the partnership status of the Claimant which the Carrier relied on to its detriment." The JCC relied on section 627.409(1), Florida Statutes (1989), which provides:
(1) All statements and descriptions in any application for an insurance policy or annuity contract, or in negotiations therefor, by or in behalf of the insured or annuitant, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless:
(a) They are fraudulent;
(b) They are material either to the acceptance of the risk or to the hazard assumed by the insurer; or
(c) The insurer in good faith would either not have issued the policy or contract, would not have issued it at the same premium rate, would not have issued a policy or contract in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.
Even an unintentional misstatement in an insurance application will preclude recovery where the misstatement materially affects the risk or the insurer's willingness to accept that risk on the agreed terms. de Guerrero v. John Hancock Mut. Life Insur. Co., 522 So.2d 1032 (Fla. 3d DCA 1988). Claimant maintains that the JCC erred, as a matter of law, in applying section 627.409(1) to hold the W/C benefits were not payable to Claimant by the Carrier, where the Employer (but not Claimant) represented that Claimant was a partner in the business.
We find our factually similar decision in B & B Steel Erectors v. Burnsed, 591 So.2d 644 (Fla. 1st DCA 1991), rev. den., 599 So.2d 654 (Fla. 1992), written after the date of the final order appealed here, is instructive in tracing the effects of the numerous changes in the applicable W/C statute during 1989-91. The evidence in Burnsed established that the claimant and his father and brother were owners and corporate officers of a construction company, B & B Steel Erectors. At some time in 1989, the brother became concerned about the high cost of the company's W/C insurance and met with his insurance agent to discuss a way to reduce premium costs. The Burnseds followed the agent's recommendation to exempt themselves from W/C coverage, as corporate officers, and to "fill the gap" with medical and disability insurance. Certificates of exemption were filed in November 1989 and February 1990. In July 1990, the agent sent the Burnseds a form letter indicating that, as a result of *190 "some very important changes" in the W/C law enacted by the Florida Legislature during the 1990 session, everyone in the construction industry was required to be covered by W/C insurance. Id. at 645. No further communication occurred between the agent and the Burnseds until the claimant in Burnsed sustained injuries while acting as both a crew supervisor and a welder substituting for an absentee worker in August 1990 (only three weeks after Darrell Perkins' accident). In February 1991, the JCC entered an order finding B & B's corporate officers were statutorily covered as of July 1, 1990, or alternatively, that the carrier was estopped from denying coverage by virtue of the Burnseds' reliance on the agent's form letter and the normal method of conducting business between the agency and the company. Id. Finding it unnecessary to address the issue of estoppel, we affirmed the order awarding benefits to Burnsed on the basis of statutory coverage. Id. at 648.
In 1990, the Florida Legislature comprehensively revised the W/C laws. See Chapter 90-201, Laws of Florida. Martinez v. Scanlan, 582 So.2d 1167, 1169 (Fla. 1991). Section 440.02(13)(c), Florida Statutes (Supp. 1990), provided, in part, that "partners or sole proprietors actively engaged in the construction industry are considered employees in all instances whether or not the right of election is exercised." "Employee" was defined to exclude "[a]ny officer of a corporation who elects to be exempt from coverage under this chapter," but the same provision stated "however, no officer of a corporation engaged in the construction industry shall be exempted from coverage under this chapter." Section 440.02(13)(d)(4), Florida Statutes (Supp. 1990).
As the result of a successful challenge to the constitutionality of Chapter 90-201 based on the "single subject" requirement of the Florida Constitution, see Martinez, 582 So.2d at 1172, a special legislative session was convened, resulting in Chapter 91-1, which expressly provided the law "shall operate retroactively to July 1, 1990." Burnsed, 591 So.2d at 646. Chapter 91-1 reenacted the W/C portion of Chapter 90-201 and did not amend section 440.02(13)(d)(4). Id. The Legislature also enacted Chapter 91-2, which both reenacted and amended certain provisions of the W/C law, but the 1991 amendments did not take effect until January 24, 1991, and did not operate retroactively. See Chapter 91-1, § 54, Laws of Florida; Burnsed, 591 So.2d at 646-47. Thus, the changes made pursuant to Chapter 91-2 were not yet in effect on the date of Claimant's injury. As in Burnsed, the law in effect at the time of Claimant's July 24, 1990, accident was Chapter 91-1, which was made to apply retroactively, and which provided that "partners or sole proprietors actively engaged in the construction industry are considered employees in all instances whether or not the right to election is exercised." See Chapter 91-1, § 7, Laws of Florida. We conclude that, as a result of the non-exempting provisions in section 440.02(13)(c) and (13)(d)4 including partners, sole proprietors, and corporate officers engaged in the construction industry within the definition of "employee," the JCC correctly determined Claimant was statutorily covered on the date of the accident. Burnsed, 591 So.2d at 648 (affirming JCC's order awarding W/C benefits to claimant based on statutory coverage).
We now address the issue of whether the JCC also correctly relied on Chapter 627 to hold the Employer, but not the Carrier, responsible for Claimant's benefits. The Carrier maintains that applying section 627.409(1), Florida Statutes (1989), a part of the Florida Insurance Code, to Employer's policy for W/C insurance is sustainable under the law, even though no Florida decision has done so. Section 627.401, Florida Statutes (1989), provides:
Scope of this part.  No provision of this part of this chapter applies to:
(1) Reinsurance.
(2) Policies or contracts not issued for delivery in this state nor delivered in this state, except as otherwise provided in this code.

*191 (3) Wet marine and transportation insurance, except ss. 627.409, 627.420, and 627.428.
(4) Title insurance, except ss. 627.406, 627.415, 627.416, 627.419, 627.427, and 627.428.
(5) Credit life or credit disability insurance, except ss. 627.419(5) and 627.428.
The Carrier submits that under the principle of expressio unius est exclusio alterius, express statutory exceptions give rise to a strong inference that no other exceptions were intended. Biddle v. State Beverage Dep't, 187 So.2d 65, 67 (Fla. 4th DCA), cert. dism., 194 So.2d 623 (Fla. 1966). The Carrier has concluded that because W/C insurance is not specifically excepted from the statute, it applies here.
As precedent for the application of section 627.409(1) to a W/C insurance case, the Carrier cites State Compensation Fund v. Mar Pac Helicopter Corp., 156 Ariz. 348, 752 P.2d 1 (Ct.App. 1987), in which the appellate court allowed an Arizona rescission statute to be applied to a W/C insurance policy, thereby relieving the W/C insurance carrier of liability. Mar Pac Helicopter warrants comparison to the instant facts in that the officers of the insured business supplied information to a carrier that subsequently denied coverage on the grounds that the employer had fraudulently misrepresented the nature of the business and the carrier acted on those misrepresentations to its detriment. The carrier relied on an Arizona statute worded substantially the same as Florida's section 627.409(1). Id., 752 P.2d at 5. However, we find Mar Pac Helicopter distinguishable in several key respects. First, the Arizona law is contrary to the following generally recognized rule of W/C insurance:
As between the insurer and the employee ... defenses based upon the misconduct or omissions of the employer are of no relevance. Fraudulent statements by the employer preceding and inducing the issuance of the policy are no defenses against the employee.
4A Larson, Workmen's Compensation Law § 92.22 at 17-10 to -11 (1987). Second, no state fund has been established in Florida for payment of compensation benefits awarded to injured workers employed by uninsured employers, while Arizona had a statutorily created special fund to protect the claimant. 752 P.2d at 3 & n. 1. We find the provisions in sections 440.10(1) (employer liability for compensation) and 440.11(1), Florida Statutes (Supp. 1990) (acknowledging exclusiveness of employer's liability and providing certain remedies for an employee whose employer has failed to secure payment of required W/C compensation), which are intended to protect injured workers, are different from Arizona's special funding provisions. Third and finally, the Arizona rescission statute on which the carrier relied was contained within the Arizona W/C Act, whereas section 627.409(1) is part of the general insurance code of Florida and a specific provision in the W/C law addresses the situation presented here and provides a remedy for the Carrier. See section 440.381(6), Florida Statutes (Supp. 1990).
Claimant argues that it was error to apply section 627.409(1) to this case because the circumstances involving Employer's misrepresentations to the Carrier are specifically and adequately covered within Chapter 440. Section 440.381(6) states:
If an employer intentionally understates payroll or misrepresents employee duties so as to avoid proper classification for premium calculations, the employer shall pay, in addition to any additional premium due resulting from an audit, a 12-percent penalty on the amount underpaid. The penalty shall be paid to the carrier.
Additionally, pursuant to the statutory authority and guidance of Chapter 440, the Division of Workers' Compensation, not the Department of Insurance, is the primary regulator of the reciprocal rights and responsibilities of an employer, a carrier, and an injured worker. Other than certain reporting requirements relating to experience rating and excessive profits, applicable to all insurers in this state, see Title 4, Florida Administrative Code, the insurance department's administrative rules neither address nor regulate the form and substance of *192 W/C insurance and practice. Certain chapters of Title 4 do, however, regulate in detail virtually every other kind of insurance. Because the Florida Legislature has specifically addressed, in Chapter 440, the Carrier's remedies in situations such as in the case sub judice, we must presume it did not intend section 627.409(1) to apply. See Home Guaranty Insur. Corp. v. Numerica Fin. Serv., Inc., 835 F.2d 1354, 1356 (11th Cir.1988) (specific regulation of mortgage guaranty insurance in Chapter 635 precluded application of § 627.409(1) to bar liability of mortgage guaranty insurer to a mortgage company, due to inaccuracies in insurance application presented to insurer by mortgagee); Aetna Insur. Co. v. Houck, 411 So.2d 936, 938 (Fla. 1st DCA 1982) (general insurance code provision authorizing attorney's fees for insureds who successfully sued insurers did not apply to W/C case, where W/C statute did not authorize attorney's fee award to anyone other than claimant's attorney). We hold the JCC erred, as a matter of law, in applying the insurance code statute to prevent Claimant's recovery from the Carrier.
We are aware of the public policy underlying the changes in section 440.02(13)(d)(4), Florida Statutes (Supp. 1990), and the legislative efforts to address the "many schemes for premium avoidance" or reduction aimed at defrauding carriers and, in some cases, possibly leaving employees unknowingly exposed to risk without coverage. Burnsed, 591 So.2d at 648. In Burnsed, we found it "at least plausible that a disproportionately large amount of fraudulent underreporting or misclassification of risk has occurred within the construction business" in an effort to reduce premiums. Id. (citing a 1990 annual report of the Florida Workers' Compensation Oversight Board addressing reporting abuses in the construction industry). After reviewing the statutory provisions governing applications for W/C coverage, reporting payroll, and payroll audit procedures, we have concluded that the Legislature has addressed the problem of employer misrepresentations and has provided a specific remedy for a carrier, against an employer, as well as penalties against any party filing false, misleading, or incomplete information relating to coverage. See section 440.381, Florida Statutes (1989). The decision whether to enact or exclude a particular remedy is a legislative prerogative that we shall not disturb.
In summary, we agree with the JCC's finding Claimant was a statutory "employee" at the time of the accident pursuant to section 440.02(13)(d)(4), Florida Statutes (Supp. 1990), but we hold the JCC erred, as a matter of law, in applying section 627.409(1), Florida Statutes (1989), to deny W/C coverage of Claimant by the Carrier under Employer's W/C policy. The order is REVERSED and REMANDED for the JCC to order CIGNA to provide W/C benefits to Claimant.
REVERSED.
WIGGINTON and KAHN, JJ., concur.