ROWE, J.
 

 In this workers’ compensation appeal, Robert Bend, Jr. (Claimant) challenges an order of the Judge of Compensation Claims (JCC) that voids ab initio the Employer’s contract for workers’ compensation insurance with Zenith Insurance Company (Zenith), based on misrepresentations made by the Employer to Zenith, either during or shortly after the completion of an application for workers’ compensation coverage. Because the JCC acted outside of his limited statutory authority in voiding this policy, and because neither the law nor competent substantial evidence supports the JCC’s alternative finding that Claimant was not employed by the Employer but, rather, by another (but otherwise legally unidentifiable) separate “entity,” we reverse and remand for additional proceedings to determine the extent of workers’ compensation benefits due Claimant.
 

 Background
 

 • On January 15, 2008, Claimant was involved in a high-speed automobile accident while driving a truck owned by the Employer (Amar Prakash doing business as Shamrock Services). At the time of the accident, Claimant was en route to a painting job (contracted for by the Employer) at a post office in Cocoa Beach, Florida. After receiving notice of Claimant’s accident and discovering the multi-faceted nature of the Employer’s business — which contrasted with the Employer’s answers to questions posed in the Employer’s application for insurance wherein the Employer described his business as a lawn maintenance service with five employees (and no independent contractors/subcontractors)— Zenith cancelled the workers’ compensation policy. At the time of cancellation, the policy had been in effect for over three years. Zenith denied Claimant’s claims for workers’, compensation benefits on the basis that Claimant was not the Employer’s employee but, rather, an independent contractor. Additionally, Zenith asserted that Claimant should be denied recovery based on misrepresentations made by the Employer in the application process and/or based on the Employer’s failure to regularly submit documentation and reports to Zenith, as required by the Workers’ Compensation Law. At trial, Zenith introduced evidence establishing that the type of painting work performed by Claimant, an activity never disclosed to Zenith before the accident, was properly classified as construction work, and Zenith’s automated underwriting system (intended for lower premium policies only) would not have issued a policy had the Employer disclosed the true nature of his business at the time of application. The Employer was neither represented nor in attendance at the workers’ compensation hearing.
 

 Findings and Conclusions of JCC
 

 The JCC found that Claimant was an “independent contractor or subcontractor for painting activities,” and that the painting work Claimant performed for the Employer was a type of service within the “construction industry.” This finding, which was not contested on appeal, eliminates any legal significance in the distinction between an employee and an independent'contractor under the Workers’ Compensation Law.
 
 See
 
 §§ 440.02(15)(c)l.-4., Fla. Stat. (2007) (defining employee to include independent contractors- and subcontractors performing services within the construction industry); 440.10(l)(b), Fla. Stat. (2007) (providing coverage for uninsured subcontractors). The JCC further concluded that, because of the Employer’s multiple material misrepresentations relating to
 
 *156
 
 the nature of his business and his business activities, the Zenith policy was void ab initio under section 627.409(l)(a), Florida Statutes (2007), thereby precluding Claimant from recovering benefits under the policy. In an oral ruling on the record, specifically incorporated into the order on appeal, the JCC found, “Shamrock Services probably should have been a Shamrock lawn service and also a separate Shamrock paint service and also perhaps a separate Shamrock property management and parking lot Service, and perhaps even a separate Shamrock deck-building service,” and “Shamrock paint services didn’t exist and it should have.” Nevertheless, in an alternative finding in the order, the JCC found that Claimant was employed “through a separate statewide business entity being run by the Employer that provided commercial painting services,” not the entity insured by Zenith. This appeal follows.
 

 Analysis
 

 We begin our analysis by asserting the necessary and oft-repeated premise that workers’ compensation is purely a creature of statute, and all rights and liabilities under the system are established by chapter 440, Florida Statutes.
 
 See, e.g., Jackson v. Computer Science Raytheon,
 
 36 So.3d 754, 756 (Fla. 1st DCA 2010). A JCC has only those powers expressly provided by statute and, conversely, has no jurisdiction or authority beyond that which is specifically conferred by statute and a court may not read into chapter 440 authority not granted to the JCCs.
 
 See, e.g., McArthur v. Mental Health Care, Inc.,
 
 35 So.3d 105, 107 (Fla. 1st DCA 2010). Significantly, nothing in chapter 440 allows a JCC to provide the remedy of voiding a policy ab initio; rather, a review of the comprehensive scheme contained within chapter 440 indicates the contrary.
 

 The JCC’s Duties and Limitations
 

 A JCC has the authority to determine if a workers’ compensation policy is in effect, has been properly cancelled pursuant to section 440.42(3), or whether it covers a particular individual. Accordingly, a JCC may be required to interpret contracts and examine evidence to reach such issues.
 
 See, e.g., Curtis-Hale, Inc. v. Geltz,
 
 610 So.2d 558 (Fla. 1st DCA 1992). A JCC may also be required to interpret a contract to determine the parties’ rights and responsibilities under the Workers’ Compensation Law.
 
 See Tampa Bay Area NFL Football, Inc. v. Jarvis,
 
 668 So.2d 217 (Fla. 1st DCA 1996). Nevertheless, a JCC is not a court of general jurisdiction, and cannot reform contracts or effect a remedy not provided for in chapter 440.
 
 See Avalon Ctr. v. Hardaway,
 
 967 So.2d 268, 272 (Fla. 1st DCA 2007);
 
 see also Fred Stevens Tree Co. v. Harrison,
 
 944 So.2d 1109, 1111 (Fla. 1st DCA 2006);
 
 see also McArthur,
 
 35 So.3d at 107. The remedy sought and obtained by Zenith here, is not available under chapter 440.
 

 Except in one limited situation, chapter 440 contemplates or permits the cancellation or expiration of policies only after timely notice.
 
 See
 
 § 440.42(3), Fla. Stat. (2007) (providing that no contract of insurance shall expire or be cancelled until proper, statutory notice is provided to employer and department). Generally, a policy for workers’ compensation insurance remains in full force and effect until can-celled on the records of the agency administering workers’ compensation law, in accordance with statutory requirements.
 
 See Travelers Ins. Co. v. Nettles,
 
 528 So.2d 1291 (Fla. 1st DCA 1988) (holding workers’ compensation policy remained in effect and could not be cancelled retroactively notwithstanding employer’s apparent misrepresentation). The only factual circumstance that allows for a “retroactive”
 
 *157
 
 cancellation of a policy is where there is duplicative or dual coverage, and both policies carry the same “effective date.” § 440.42(3), Fla. Stat. (2007). Here, the factual predicate for chapter 440’s singular allowance for retroactive cancellation or ab initio voidance of an insurance policy is not present.
 

 Acknowledging chapter 440
 
 does not
 
 contain the remedy afforded by the JCC here, Zenith argues that the JCC was obliged to seek a remedy
 
 outside
 
 of chapter 440, specifically the denial of recovery under section 627.409(1)(a), Florida Statutes (2007), because it is otherwise without remedy for the harm incurred. This argument, in addition to being flawed in its premise (as chapter 440 provides an arsenal of’ remedies to address the wrongs committed here), stands in stark contrast to the statutory proclamation that the liability of a carrier to an employee shall be “as provided” by chapter 440
 
 (see
 
 section 440.11(4), Florida Statutes (2007)) and would require this court to unravel the comprehensive scheme enacted by the Legislature relating to coverage, the issuance and cancellation of policies, the collection of premiums, the performance of audits, and the rights and responsibilities as between employers and carriers regarding employer-fraud relating to coverage issues — an invitation which we must decline.
 

 Rights and Responsibilities of Employers and Carriers under Chapter 440
 

 The Workers’ Compensation Law requires all employers in Florida (with limited exceptions not applicable here) to secure workers’ compensation coverage through the procurement of an insurance contract (and, only where appropriate, through a well-regulated system of self-insurance), and specifically directs that even unlawful employment be covered under chapter 440.
 
 See
 
 §§ 440.02(15)(a), 440.38(1)(a)-(b) Fla. Stat. (2007). In its routine operation, chapter 440 expands coverage to not only the known employees of the employer, but also to individuals to whom the carrier never intended to extend coverage.
 
 See, e.g., Antinarelli v. Ocean Suite Hotel,
 
 642 So.2d 661 (Fla. 1st DCA 1994) (holding hotel which included in its room rate, voucher entitling guests to complimentary breakfast was “statutory employer” of waitress employed by restaurant which was neither owned nor operated by hotel);
 
 see also Pullam v. Hercules Inc.,
 
 711 So.2d 72 (Fla. 1st DCA 1998).
 

 To effect chapter 440’s primary purpose of relieving society of the burden of caring for an injured worker, and to ensure that coverage is not being gratuitously or improperly extended to employers — which, by definition, includes businesses engaging in unlawful enterprise— the Legislature has imposed numerous mandatory obligations on employers and carriers alike, so that a carrier may use broad discretion and exercise the degree of diligence it deems necessary to screen and audit those employers to which it might extend, or to which it has extended, coverage.
 
 See Sam Rogers Enters. v. Williams,
 
 401 So.2d 1388, 1390 (Fla. 1st DCA 1981). Additionally, where coverage is improvidently granted or extended by a carrier, or improperly obtained by an employer, chapter 440 provides a double-barreled remedy that allows a carrier to cancel an employer’s policy and collect greatly enhanced retroactive premiums and damages, even in the absence of an injury or accident.
 
 See
 
 §§ 440.381(6)(a), 440.42(3), Fla. Stat. (2007).
 

 Employers’ Obligations and Carriers’ Rights at the Time of Application
 

 In the application process, and before issuing a policy of insurance, a carrier
 
 *158
 
 may request any “information necessary to enable the carrier to accurately underwrite the applicant.” § 440.381(1), Fla. Stat. (2007);
 
 [1]
 

 see
 
 Fla. Admin. Code R. 690-189.003(l)(b)(m). Further,
 
 every
 
 employer is required to maintain extensive records regarding, its finances, contracts, taxes, and additional documentation relatr ing to every individual “to whom the employer paid or owes remuneration for the performance of any work or service in connection with any employment under any appointment or contract for hire or apprenticeship,” including those individuals paid under a 1099 Miscellaneous Income form (the means by which Claimant was paid by the Employer).
 
 See
 
 Fla. Admin. Code R. 69L-6.015 (enacted pursuant to §§ 440.05(10), 440.107(5), and 440.591). Although Zenith was not required to do so, it could have, rather than relying on its automated on-line system for policy underwriting (and the Employer’s unsubstantiated responses to basic questions regarding the nature of his business), required the Employer to provide the extensive documentation which he was obligated to maintain under Rule 69L-6.015. Zenith, however, did not exercise its entitlement to this documentation, and issued a policy nonetheless.
 

 The Carrier’s Remedies After the Issuance of a Policy
 

 The Legislature, obviously aware of the “many schemes for premium avoidance, or reduction aimed at defrauding carriers,” did not limit its protection of carriers to the ability to conduct thorough pre-policy inspection of employers.
 
 See Perkins v. A. Perkins Drywall,
 
 615 So.2d 187, 192 (Fla. 1st DCA 1993). It also enacted additional procedures and remedies for after-the-fact examinations of the policy, estimated premiums, the employer, and the application. These remedies, however, allow for only the cancellation, but not the voiding of a policy, along with the collection of penalties, damages, and additional premiums.
 

 For example, section 440.381(6)(a), Florida Statutes (2007), provides:
 

 If an employer understates or conceals payroll, or misrepresents or conceals employee duties so as to avoid proper classification for premium calculations, or misrepresents or conceals information pertinent to the computation and application of an experience rating modification factor, the employer, or the employer’s agent or attorney, shall pay to the insurance carrier a penalty of 10 times the amount of the difference in premium paid and the amount the employer should have paid and reasonable attorney’s fees. The penalty may be enforced in the circuit courts of this state.
 

 Here, Zenith did not avail itself of this remedy specifically directed towards misrepresentations or concealments relating to payroll, and employee duties (and thus, the nature of the business being insured). Zenith argues this remedy
 
 would have been
 
 fruitless because the Employer did not make misrepresentations in the application for insurance. Zenith posits that at the time of application and the issuance of the policy, the Employer operated only a lawn maintenance business and, thus, accurately reported his business activities in the application. Zenith urges that it was the Employer’s breach of his promise and duty to update the application which gave rise to the actionable concealment and/or misrepresentations.
 
 [1]
 
 Zenith further ar
 
 *159
 
 gues that no evidence was introduced that the Employer’s misrepresentations or concealment were made
 
 for the purpose
 
 of avoiding premiums, making section 440.381(6)(a) inapplicable. These arguments, however, .do not thwart the applicability of section 440.381(6)(a) and its allowance for Zenith to seek from the Employer in circuit court, ten times the difference in premium paid and the amount he should have paid, and reasonable attorney’s fees.
 

 Contrary to Zenith’s argument, the remedy provided for in section 440.381(6)(a) is not limited to misrepresentations made in the application process; rather, the language of the statute is sufficiently broad to encompass any pertinent misrepresentation or concealment made by an employer, whether made at the time of application or thereafter.
 
 See
 
 440.381(1)-(8), Fla. Stat. (2007). Moreover, section 440.381(6)(a) predicates a carrier’s recovery of damages upon the concealment or misrepresentation of employee’s duties or payroll information, which in fact, prohibits or avoids (or is pertinent to) the proper classification of employees for underwriting purposes, and is not based on the subjective intent of the misrepresenting (or concealing) employer, or that of the carrier. Here, the application for workers’ compensation insurance signed by the Employer expressly provides that the employee classification is for “rating information,” and the numerous fraud disclaimers signed by the Employer and his agent state that the information in the application (regarding employee duties) pertained to premiums. and rates. Accordingly, the absence of any evidence as to the Employer’s subjective intent does nothing to remove this case from the class of cases involving an understatement of or concealment of payroll, or misrepresentation of employee duties “so as to avoid proper classification for premium calculations” — for which a remedy is provided in section 440.381(6)(a).
 

 Nevertheless, even if the Employer did not misrepresent the nature of his business in the application for insurance and only became an undesirable risk after the issuance of the policy, chapter 440 specifically accounts for such circumstances, allowing carriers to enforce all updating requirements and perform unfettered audits, with attending remedies thereto. Under the requirements of chapter 440 and the application signed by the Employer, the Employer was required to timely and regularly submit to Zenith quarterly employee earnings reports,
 
 see
 
 section 440.381(4), Florida Statutes, and, update his application monthly. The failure to update the application is a crime.
 
 See
 
 § 440.105(3)(a), Fla. Stat. (2007). Under the mandatory provisions of section 440.105(l)(a), Florida Statutes (2007), a carrier must report such omissions to the Division of Insurance Fraud, Bureau of Workers’ Compensation Fraud, which in turn is required to investigate and report the criminal act to the prosecuting agencies “having jurisdiction” under chapter 440.
 
 [2]
 
 Further, the adminis
 
 *160
 
 trative code provision governing quarterly-reports affords a carrier the authority to “develop its own procedures” for terminating coverage when the quarterly earnings report forms are not received. Fla. Admin. Code R. 69O-189.003(4)(d).
 

 Here, the Employer, in the three-plus years his policy with Zenith was active and in effect, never updated his application and never submitted his quarterly earnings reports. Yet, Zenith evidently did not comply with the mandatory reporting scheme imposed by section 440.105(l)(a), reported nothing to the Division of Insurance Fraud, Bureau of Workers’ Compensation Fraud, and apparently chose not to avail itself to the right to cancel coverage. Instead, Zenith continued to collect premiums from the Employer, and renewed his policy on an annual basis.
 

 Notwithstanding the Employer’s failure to submit the required reports and Zenith’s failure to effectively enforce these reporting requirements as required by chapter 440, Zenith had the additional right and obligation to conduct periodic audits, with attending remedies. Chapter 440, for the express purpose of allowing carriers to review all sources of payments to employees, subcontractors, and independent contractors, and to verify the accuracy of employee classification — after the issuance of a policy — requires carriers to conduct audits as desired (including physical, on-site audits), but no less frequently than “biennially.” The audits must include, but are not limited to, the review of state and federal reports of employee income, payroll, and other accounting records.
 
 See
 
 § 440.381(3), Fla. Stat. (2007). Further, Florida Administrative Code Rule 690-189.003 allows each carrier to require an employer to produce (for the completion of an audit) any documents necessary to establish premiums or assign employee classifications, including, but not limited to accounting records, independent contractor agreements, federal reports of employee income, and cash disbursement journals. If an employer fails to provide reasonable access to payroll records, the employer shall pay a premium to the carrier up to three times the recent
 
 estimated
 
 annual premium.
 
 See
 
 § 440.381(8), Fla. Stat. (2007).
 

 Here, Zenith twice attempted to audit the Employer with nominal to no compliance from the Employer. In the first audit, the Employer reported he could not find his paperwork; however, during this audit Zenith became aware that the Employer, contrary to the representations in the application, was perhaps using subcontractors. The second audit, conducted by mail, was not responded to at all by the Employer. Rather than cancelling the policy as a result of Employer’s non-compliance with the two audits, as was its right and statutory remedy, Zenith renewed the policy and collected additional premiums.
 
 [3]
 

 In addition to all of the foregoing remedies, and the procedures for cancellation of a policy based on misrepresentations made by an employer, chapter 440 expressly provides that a carrier may obtain full indemnification (meaning the carrier remains liable to the employee) from the
 
 *161
 
 employer, along with attorney’s fees, actionable in circuit court, for benefits due to an employee who is not reported by the employer in the mandatory quarterly earnings reports.
 
 See
 
 § 440.381(7), Fla. Stat. (2007). Failure of the employer to indemnify the carrier within twenty-one days after demand for same is made “is grounds for the insurer to immediately cancel coverage.”
 
 See id.
 
 Zenith also failed to avail itself of this remedy.
 

 Despite Zenith’s failure to fully enforce its rights and remedies available under chapter 440, it argues and the JCC concluded, its circumstances are unique because it would not have issued the policy in question had the Employer answered the questions in the application correctly. Zenith asserts the remedies afforded by section 440.381(6)(a), Florida Statutes (2007), do not address the
 
 type
 
 of fraud committed by the Employer, forcing it to pay on a contract of insurance it did not wish to write. Although Zenith attempts to distinguish itself from the remainder of the workers’ compensation carriers in Florida victimized by employer-fraud by insisting it would not have issued the policy in question had it known the truth about the Employer’s business operations, such detrimental reliance is the essence of nearly every claim of employer fraud. Although it is not beyond the Legislature’s prerogative to design such a scheme, it has not through any express declaration allowed for a workers’ compensation carrier to absolve itself from all responsibility to insure an employer for workers’ compensation liability upon a representation that the carrier would not have issued the policy had it known the truth as to an employer’s operation — a statement that could be made and proven in every instance of unlawful employment, unforeseen or misrepresented risk, or where the employer has obtained or maintained workers’ compensation insurance coverage through the commission of criminal acts — the very subject matter of section 440.381(6)(a).
 

 Interpreting chapter 440 so as to allow the ab initio voiding of a workers’ compensation policy, where the policy (in retrospect) would not have been written, would nullify the comprehensive coverage and enforcement scheme in chapter 440. Such interpretation would greatly diminish a carrier’s incentive to perform timely, meaningful, or diligent application reviews or audits, or to adhere to the reporting requirements imposed by the Workers’ Compensation Law, ultimately leaving the tax-paying public with the responsibility of furnishing compensation on behalf of those carriers who do not adhere to the mandatory provisions of chapter 440. Moreover, a judicial allowance for .the ab initio voi-dance of a policy for workers’ compensation coverage would require the courts to fashion (without statutory guidance) á multitude of additional ad hoc remedies for the employees potentially affected by the voi-dance — especially in the instance of a long-term policy covering a multitude of employees, some of whom might have vested rights under the Workers’ Compensation Law. Accordingly, the result urged by Zenith is in direct contravention with the comprehensive scheme constructed by the Legislature.
 
 See
 
 § 440.015, Fla. Stat. (2007). Rather, the exclusive remedies for the type of harm complained of by Zenith are found within chapter 440 — a conclusion which is not only consistent with the legislative intent manifested in chapter 440, but also in accord with our holding in
 
 Perkins.
 

 Zenith asks this court, however, to disregard or distinguish
 
 Perkins,
 
 so as to permit a workers’ compensation carrier to obtain remedy under section 627.409(1) and retroactively avoid its responsibility to provide benefits to an employee, because of an employer’s misrepresentations in the application or negotiations -for a policy of
 
 *162
 
 insurance. In
 
 Perkins,
 
 we concluded that a JCC erred “as a matter of law” in applying section 627.409(1), so as to deny workers’ compensation benefits to an employee based on employer-fraud because “the Legislature has addressed the problem of employer misrepresentations and has provided a specific remedy for a carrier, against an employer, as well as penalties against any party filing false, misleading, or incomplete information relating to coverage.” 615 So.2d at 192. In
 
 Perkins,
 
 we also commented that “(t]he decision whether to enact or exclude a particular remedy is a legislative prerogative that we shall not disturb.”
 
 Id.
 
 Since
 
 Perkins
 
 ’ release in 1993, there have been significant, broad-sweeping revisions to the Workers’ Compensation Law; however, no subsequent enactment provides a basis to conclude that a JCC’s authority has been expanded to allow for the imposition of remedies not expressly conferred by chapter 440.
 
 Cf.
 
 § 440.11(4), Fla. Stat. (2007) (“[T]he liability of a carrier to an employee ... shall be as provided in this chapter, which shall be exclusive and in place of all other liability.”). Rather, the subsequent enactments of chapter 440 have greatly enhanced the penalties, remedies, and enforcement for employer-fraud and misrepresentation (actionable in forums other than before the JCC), allowing for in addition to the assessment of punitive premiums, other penalties and remedies, including complete indemnification from the employer for all benefits due an employee who is not reported as earning wages in mandatory quarterly earnings reports.
 
 See
 
 § 440.381(7), Fla. Stat. (2007). The Legislature has further advanced an intent that an employer’s act of committing fraud against the carrier shall not affect benefits payable to the employee, by the carrier or employer
 
 (see, e.g.
 
 section 440.107(2), Florida Statutes (2007) (effective October 1, 2003)) — and notably, has made no pronouncement that some types of employer-fraud in the application, or the mandatory updating, process are not governed by chapter 440. Accordingly, we find no basis to recede from or distinguish
 
 Perkins,
 
 relative to the issues presented here.
 

 The JCC’s Alternative Basis of Denial
 

 Although Zenith urges, and the JCC alternatively found, that Claimant was employed by a separate entity other than the Employer doing business as Shamrock Services (perhaps “Shamrock Painting Services” — an entity which the JCC also found did not exist), both fail to identify a legally recognized entity which employed Claimant, other than the sole proprietorship to which Zenith extended coverage. The undisputed evidence establishes Claimant was paid by the Employer under the same federal employer identification number which appears in the application for workers’ compensation insurance. The Employer’s banking and tax records, and other documents reflecting the Employer’s business dealings, indicate a single legal entity (operating under a single federal employer identification number), a sole proprietorship, providing a variety of maintenance services to the public. Significantly, no competent evidence, or legal principle brought to our attention, supports the JCC’s finding that Claimant was employed by a separate legal entity other than the Employer.
 

 Conclusion
 

 Because Claimant was an uninsured independent contractor performing services in the construction industry (and thus was, by definition, an “employee” of the Employer,
 
 see
 
 section 440.02(15)(c)2.-4., Florida Statutes (2007)), injured in the course and scope of his employment, during the effective period of the policy in question, we QUASH that portion of the JCC’s order voiding the policy of workers’ compen
 
 *163
 
 sation insurance, REVERSE the JCC’s denial of benefits based on the voidance of the policy ab initio, and REVERSE the JCC’s finding that Claimant was not employed by the Employer. We REMAND for further proceedings to determine those workers’ compensation benefits (if any) to which Claimant is entitled based on his status as an employee. We make no determinations as to the Employer’s liability to Zenith, other than to state, under these facts, such causes are not actionable before the JCC.
 

 BENTON, C.J., AND WETHERELL, J., concur.
 

 [1]
 

 . Section 627.409(1)(a), Florida Statutes (2007), the provision of the general Insurance Code on which Zenith relies, pertains to misrepresentations made in the application or in the negotiations for a policy. If, indeed, the Employer was forthright in his application and negotiation for the policy of insurance (as posited by Zenith), it is not clear how section
 
 *159
 
 627.409(l)(a) would apply to the facts of this case.
 

 [2]
 

 . The Department of Financial Services (department) is the administrative agency charged with enforcing workers’ compensation coverage requirements, including the requirement “that the employer provide the carrier with information to accurately determine payroll and correctly assign classification codes." § 440.107(3), Fla. Stat. (2007);
 
 see also
 
 § 440.015, Fla. Stat. (2007). Assuming a carrier is fulfilling its reporting obligations, the department is empowered and obligated to fully investigate reports of suspected employer non-compliance, and issue and enforce "stop work orders” based on an employer's material misrepresentations or concealments relating to payroll and employee duties.
 
 See
 
 § 440.107(2)-(7), Fla. Stat. (2007). The entry of a stop work order (based on an employer’s misrepresentations) has "no effect” on a "carrier’s duty to provide benefits”
 
 (see
 
 section
 
 *160
 
 440.107(2)); but, whenever the department determines that an employer has materially understated payroll, or concealed employee duties, the carrier may, thereafter cancel the policy after giving written notice to the employer.
 
 See
 
 § 440.381(6)(b), Fla. Stat. (2007).
 

 [3]
 

 . The record demonstrates that Zenith has adopted a procedure to either cancel a policy or add a 25% surcharge on premiums (at its discretion) in the event of audit non-compliance, and here, Zenith chose to exercise the assessment of the surcharge based on the Employer’s non-compliance.