672 So.2d 592 (1996)
CLEVELAND CONSOLIDATED, INC., and Argonaut Insurance Company, Appellants,
v.
Ralph HAREN, Appellee.
No. 92-2517.
District Court of Appeal of Florida, First District.
April 24, 1996.
Edward W. Levine of Marlow, Connell, Valerius, Abrams, Lowe & Adler, Miami, for Appellants.
L. Barry Keyfetz, Miami, for Appellee.
PER CURIAM.
Cleveland Consolidated, Inc., and its carrier appeal a workers' compensation order awarding benefits to Ralph Haren pursuant to the Florida workers' compensation act. The judge exercised jurisdiction of the claim based on his ruling that Haren's contract of *593 employment was made in Florida rather than in Georgia, the place of employment where the injury occurred. This ruling was predicated on parol evidence of the intent and practice under the union agreement governing labor relations on this project and the judge's interpretation of the agreement based on that evidence. We reverse for lack of jurisdiction because the language of the union agreement governing Haren's employment, being unambiguous, cannot be varied by parol evidence, and the provisions of the agreement make clear that Claimant's contract of employment was made at the plant site in Georgia and not in Florida.
Claimant is a member of a local electricians' union in Miami, Florida. He was injured in Georgia on February 17, 1986, while working for Cleveland Consolidated, Inc., a contractor on a project for Georgia Power Company. He was paid workers' compensation benefits under Georgia law from the date of the accident. In 1991, he filed a claim for workers' compensation benefits under the Florida Workers' Compensation Law, Chapter 440, Florida Statutes (1985), with credit to be given for all benefits paid under the Georgia law.
The matter came on for hearing at which the sole issue was whether Claimant's contract of employment was made in Florida or in Georgia. The judge of compensation claims heard testimony from three witnesses: (1) Claimant, (2) the business manager of the local electricians' union in Augusta, Georgia, that had executed the labor agreement for this project with Georgia Power, and (3) a Georgia Power supervisor in charge of labor relations. The labor agreement covered Georgia Power and its contractors and subcontractors on the project. The witnesses essentially testified to their interpretation of the agreement and their understanding of employment practices under it. Claimant and the union business manager asserted that Claimant was employed when the Miami local referred him to the Georgia project, thereby suggesting that the contract of employment was made in Florida. The Georgia Power supervisor testified to his understanding that the union merely referred members to the project site where they were accepted or rejected for employment by the contractor. The judge of compensation claims accepted the testimony of Claimant and the union business manager, rejected that of the supervisor, and ruled that the contract was made in Florida. This ruling was erroneous for the following reasons.
Jurisdiction of this claim is dependent upon the provision in section 440.09(1), Florida Statutes (1985), that "[w]here an accident happens while the employee is employed elsewhere than in this state, which would entitle him or his dependents to compensation if it had happened in this state, the employee or his dependents shall be entitled to compensation if the contract of employment was made in this state, or the employment was principally localized in this state." (Emphasis added.) "Where an employment contract was made is determined through a consideration of (1) the hiring authority of the person involved in employment negotiations with the claimant, and (2) the place of performance of the conditions of the proposed employment." Nelson v. McAbee Construction, Inc., 591 So.2d 1015, 1016 (Fla. 1st DCA 1991). Since the place of performance was indisputably Georgia, we look to the labor agreement to determine the hiring authority of the union business manager involved.
Several provisions of the agreement are relevant to this issue. The agreement provides in Article 3, entitled "Scope of Agreement," that:
(1) This Agreement shall apply to all construction work within the limits and boundaries of the Plant Alvin W. Vogtle project in Burke County, Georgia with the exception of fence erection.
(2) The working conditions and hours of employment herein provided have been negotiated by the Union exclusively with the representatives of the Georgia Power Company on behalf of its Contractors and Sub Contractors.
(3) Any provision of a local or area collective bargaining agreement contrary to, or in conflict with this agreement, or contrary to the intent and meaning of this agreement, *594 shall not be enforced as to Employers working under this agreement.
These provisions make it abundantly clear that the hiring authority, including terms and conditions, are to be governed by this agreement and not by any local union practice that may differ from this agreement. The agreement then provides in pertinent part in Article 4, entitled "Referral of Men":
(1) Each employer on the project shall have the unqualified right to select and hire directly all supervisors that it considers necessary and desirable without such persons being referred by the Unions. Local craftsmen will be given first consideration for foreman and general foreman classifications. When, in the Employers opinion, qualified local personnel are not available, other applicants will be obtained from available sources and referred by the Union to the project. Applicants for the classifications of journeyman, apprentice or trainee, and helper required by the Employer on the said construction project, shall be referred to the Employer by the Unions. The Employer shall have the right to reject any applicant referred by the Unions.

(2) The Unions shall accept for registration and refer all applicants for employment without discrimination against any applicant by reason of race, creed, national origin, as well as membership or non-membership in the Union, and such referrals shall not be affected in any way by the rules, regulations, by laws, constitutional provisions or any other aspect or obligation of union membership policies or requirements.
(3) In the event the referral facilities maintained by the Unions are unable to fill the requisition of the Employer for employees within a forty-eight (48) hour period after such requisition is made by the Employer (Saturdays, Sundays, and Holidays excepted), the Employer may employ applicants directly at the job site.
(Emphasis added.) It is noteworthy that the agreement, in describing potential employees, uses the words "applicant" who is "referred" to the employer by the union, and specifically recites that the employer has the right to "reject any applicant referred by the Unions." Nothing in the agreement indicates that the employers have delegated to any union representatives authority to make binding contracts of employment with applicants being referred by the unions. On the contrary, the agreement is patently free of any ambiguity and means what it says: the unions shall refer applicants for employment within 48 hours of a request for personnel and the employer shall accept or reject these applicants at the employer's place of employment. The terms of this agreement being free of ambiguity, the judge of compensation claims erred in receiving and relying on parol evidence to vary or otherwise contradict the plain meaning of the agreement. Atkins v. Bianchi, 162 So.2d 694, 697 (Fla. 1st DCA 1964).[1]
In the instant case, the union business manager in the Georgia local called on the Miami local to refer some members to the project, and the Miami local gave Claimant a "letter of introduction" which he presented to the Georgia union business manager upon arrival. The Georgia manager gave Claimant a referral slip with instructions as to when and where to report to the employer. When he arrived at the employer site, Claimant completed forms and was given tests on different elements of electrical work before he was allowed to commence work. We find no material distinction between this case and our decision in Nelson v. McAbee Construction, wherein the labor agreement contained provisions that the employer was free to employ applicants from any other source if the union did not supply qualified applicants within 48 hours, and also provided that the employer retained the right to reject any job applicant referred by the union. While our opinion noted the union official testified that actual hiring took place at the job site, that testimony was consistent with the contract *595 provisions and thus was admissible evidence. Atkins v. Bianchi. However, in this case the testimony of the union business manager was inconsistent with the provisions of the labor agreement, so it was not admissible in evidence and the judge's reliance on it to vary the plain meaning of the agreement violated the parol evidence rule. Significantly, the Georgia union business manager did not testify to any facts, such as a subsidiary or subsequent agreement authorizing or delegating to the union complete hiring authority, to show that the plain terms of the written agreement had been amended or modified. Nor did Claimant offer any evidence of such modification of the written agreement. We can readily understand, if the union can supply workmen not only from union locals in Georgia but from locals in other states as well, why the employer would retain the right to make the final decision on employment and not delegate that decision to the union business manager. If, as Claimant contends, the contract of employment would be made at the referring local union, then the employer would have no idea of which state's workers' compensation law would be applicable to employees performing that contract until the union supplied the personnel. Thus, the employer would have no basis to estimate with assurance the scope and cost of workers' compensation insurance coverage for its employees on the project. We are not inclined to approve the Claimant's contention in construing the unambiguous language of the labor agreement.
Therefore, the order under review is reversed and this cause is remanded with directions to dismiss the claim for lack of jurisdiction.
REVERSED AND REMANDED.
ZEHMER, C.J., and WEBSTER, J., concur.
JOANOS, J., dissents with written opinion.
JOANOS, Judge, dissenting.
I disagree with the majority's view that the document was free of ambiguity. After considering the contract and the other evidence presented, the judge determined that there was "... at the least, a conditional hiring of the out of state worker when engaged by the union with the right to reject or terminate qualified by the requirement of good cause such as failure of the applicant to pass a drug test." I would not disturb that finding.
The contract reserved to contractors on the project the right to select and hire directly all supervisors. However, the agreement provided that the employer could not employ anyone for the classifications of journeyman, apprentice, helper, or trainee who was not referred by the unions, unless the unions were unable to provide the required number of workers within forty-eight hours. The agreement provided that the employer would notify the unions of the special qualifications or skills which workers must possess, and the unions would not refer persons who were unable to perform the specified work. Under the contract, the employer was allowed to "reject" the referrals, but it is clear that the employer could not "employ applicants directly at the job site" unless the Unions could not fill the requisition within forty-eight hours. It appears that at the very least, the contract was ambiguous as to who was doing the hiring, the unions or the employer.
The evidence shows that the claimant was contacted by his union hall in Miami, went to the Georgia union hall, received a referral slip, and went to the job site and started working. He was not paid to travel to Georgia's union hall, or to the job site. He did not take a pre-employment physical, or a drug test until a week or two after he started working.
The judge found that the union was the agent of the employer, and as such, was authorized to engage workers before their arrival at the job site. This finding is consistent with the terms of the agreement, and is a reasonable interpretation of the parties' course of dealing.
The majority opinion refers to Nelson v. McAbee Construction, Inc., 591 So.2d 1015 (Fla. 1st DCA 1991). The Nelson case affirmed a finding that in a situation with a written document similar to the one here, the employment decision had not been delegated *596 to the union. However, this conclusion was based not only on the terms of the document, but in conjunction with the testimony presented. The judge in our case considered the terms of the document with the testimony presented, and concluded that conditional hiring authority had been delegated to the union. The document and the testimony supports that conclusion. We should affirm.
NOTES
[1] "In determining whether the trial judge has erred as a matter of law in his construction of the contract, we must be guided first by the language of the contract itself and where the contract is clear and unambiguous there is no reason to go further." Automatic Canteen Co. of America v. Butler, 177 So.2d 712, 715 (Fla. 3d DCA 1965).