947 So.2d 599 (2007)
Paul HAZEALEFERIOU, Appellant,
v.
LABOR READY and Employer Self Insured Services (ESIS), Appellees.
No. 1D05-5619.
District Court of Appeal of Florida, First District.
January 5, 2007.
Rehearing Denied February 5, 2007.
*600 Stephen L. Rosen, Tampa, for Appellant.
John G. Brady and Benjamin Winter of Brady, Andrews & Winter, Tampa, for Appellees.
VAN NORTWICK, J.
In this workers' compensation appeal, Paul Hazealeferiou, claimant, seeks reversal of a final order by which the Judge of Compensation Claims (JCC) dismissed his petition for benefits under the Florida *601 Workers' Compensation Law. In the order, the JCC ruled that, based upon findings that the employment accident occurred in Alabama, the subject employment agreement was made in Alabama, and no record evidence established that claimant's employment was principally located in Florida, under section 440.09(1), Florida Statutes (2005), claimant had not established jurisdiction under chapter 440. Because competent substantial evidence supports the JCC's findings, we affirm.
P & H Stucco and Construction, Inc. ("P & H") is a stucco, sandblasting, and painting company based in Florida and operating in several southeastern states. Depending on the level of P & H's business, the company maintains between three and seven employees. P & H has three officers: claimant is vice-president of the company and owns 49% of its capital stock; claimant's wife is president and owns 51% of the stock; claimant's daughter is secretary of the company.
P & H began operations in 1978. In early 2003, P & H entered into an agreement with appellee Labor Ready, Inc. ("Labor Ready"), an employee leasing company, under which Labor Ready employed the P & H employees, leased those employees back to P & H, maintained payroll, and provided workers' compensation and general liability insurance for P & H's ongoing business in all states in which P & H operated. P & H reached agreement with Labor Ready through Labor Ready's Florida branch, but dealt with the Labor Ready branch in Tuscaloosa, Alabama for all subsequent matters. Claimant entered into an employment agreement with Labor Ready at the inception of the employee leasing agreement between P & H and Labor Ready. Claimant's employment documentation with Labor Ready was completed by mail or fax between claimant in Florida and the Labor Ready office in Alabama.
The leasing fee paid by P & H to Labor Ready including a premium for workers' compensation insurance. The Labor Ready branch manager testified that this premium varied according to the state in which the employment was based. Thus, a work ticket issued by the Tuscaloosa branch would designate employees as Florida employees if their project was in Florida. Labor Ready would issue paychecks for employees on a weekly basis according to hours worked for P & H.
In September 2003, P & H procured a contract to perform sandblasting work for the State of Alabama. When the project began in October 2003, claimant and his wife traveled to the job site. During the Alabama job, Labor Ready paid payroll through its Tuscaloosa, Alabama branch and charged P & H workers' compensation premiums based on the Alabama locus.
In December 2004, claimant was injured on the Alabama job. The parties stipulated that the injury occurred on December 8, 2004, and that, at such time, there existed an employer/employee relationship between claimant and Labor Ready. Upon notification of claimant's injury, the Labor Ready branch manager filed an Alabama Notice of Injury by contacting Labor Ready's adjustor, appellee Employer Self Insured Services (ESIS). Claimant filed a petition for benefits in Florida. On consideration of claimant's petition for benefits under chapter 440, Florida Statutes, the JCC found that the contract at issue was the employment contract between claimant and Labor Ready, the contract between claimant and Labor Ready was made in Alabama, and there was no evidence establishing that claimant's employment was principally located in Florida. Based upon these findings, the JCC dismissed the claim, ruling the claim did not satisfy the *602 requirements of section 440.09(1)(d), Florida Statutes (2005), and that proper jurisdiction was in Alabama. Claimant filed a timely notice of appeal.
Claimant asserts that the contract between P & H Stucco and Labor Ready was made in Florida, his primary residence was in Florida and he was loaned to a company (P & H) principally located in Florida, he was hired by P & H in Florida and his salary and expenses for the Alabama contract were provided by P & H, and all documentation provided by Labor Ready to P & H was sent to P & H's Florida business address. Based on these facts showing contracts with the State of Florida, claimant argues that the JCC erred in denying jurisdiction to his claim pursuant to section 440.09(1)(d). We cannot agree.
Section 440.09(1)(d), in pertinent part, provides:
If an accident happens while the employee is employed elsewhere than in this state, which would entitle the employee or his or her dependents to compensation if it had happened in this state, the employee or his or her dependents are entitled to compensation if the contract of employment was made in this state, or the employment was principally localized in this state. . . .
§ 440.09(1)(d) (2005), Fla. Stat. (2005). Thus, under section 440.09(1)(d) a claimant injured in an employment accident outside of Florida is entitled to compensation under chapter 440 only if one of the following two factors are established: (1) the contract of employment was made in Florida or (2) the claimant's employment was principally localized in Florida. We will examine each factor separately.

The Contract of Employment
In determining whether the contract of employment was made in Florida, we must first examine the relevant employee-employer relationship under these circumstances. Section 440.02(15)(a) defines "employee" in the worker's compensation context as follows:
"Employee" means any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed . . .
§ 440.02(15)(a) Fla. Stat. (2005) (emphasis added). This section goes on to define "employer" as follows:
"Employer" means the state and all political subdivisions thereof, all public and quasi-public corporations therein, every person carrying on any employment, and the legal representative of a deceased person or the receiver or trustees of any person. `Employer' also includes employment agencies, employee leasing companies, and similar agents who provide employees to other persons.

§ 440.02(16)(a) Fla. Stat. (2005) (emphasis added). The broad language of these provisions reflects the intent of the legislature to afford expansive reach to employee coverage under Florida workers' compensation, subject only to narrow exceptions. See 9 Patrick John McGinley, Florida Workers' Compensation § 6.4 (2006 ed.).
Distinguishing the relevant employer for workers' compensation purposes in an employee leasing context is more complicated, however, than simply determining who might qualify as an employer under chapter 440. Section 468.529, pertaining specifically to licensed employee leasing companies, provides:
(1) A licensed employee leasing company is the employer of the leased employees . . . and shall be responsible for *603 providing workers' compensation coverage pursuant to chapter 440.
§ 468.529(1) Fla. Stat. (2005). In the workers' compensation context, however, our analysis does not stop with section 468.529. As Professor Larson explains, under the so-called doctrine of lent employment:
When a[sic] employer lends an employee to another party, that party becomes liable for worker's compensation only if
(a) the employee has made a contract of hire, express or implied, with the second employer;
(b) the work being done is essentially that of the second employer; and
(c) the second employer has the right to control the details of the work.
When all three of the above conditions are satisfied in relation to both employers, both employers will be liable for worker's compensation and both will both [sic] have the benefit of the exclusivity defense for tort claims.

Under this doctrine, the lending employer is known as the "general employer" and the borrowing employer, the "special employer."
3 Arthur Larson & Lex K. Larson, Larson's Worker's Compensation Law § 67.01 (2006) (emphasis added); see also Shelby Mut. Ins. Co. v. Aetna Ins. Co., 246 So.2d 98, 100-01 (Fla.1971).
The doctrine of lent employment reflects the dual purpose of ensuring that a lent employee is covered by workers' compensation and immunizing employers attaining "special employer" status from liability in tort. In Florida, the doctrine's specific application to employee leasing arrangements is embodied in section 440.11(2), which provides, in pertinent part:
[I]mmunity from liability [other than for workers' compensation] shall extend to an employer and to each employee of the employer which utilizes the services of the employees of a help supply services company, as set forth in Standard Industry Code Industry Number 7363, when such employees, whether management or staff, are acting in furtherance of the employer's business. An employee so engaged by the employer shall be considered a borrowed employee of the employer and, for the purposes of this section, shall be treated as any other employee of the employer. The employer shall be liable for and shall secure the payment of compensation to all such borrowed employees as required in § 440.10, except when such payment has been secured by the help supply services company.
§ 440.11(2) Fla. Stat. (2005). For the purposes of this section governing employer immunity from tort liability, employers leasing employees from employee leasing companies become special employers of the borrowed employees. Accordingly, special employers are immune from tort liability and are responsible for providing workers' compensation benefits, unless such benefits are provided by the employee leasing company.
The seeming disparity between section 440.11(2) (conferring special employer status to companies borrowing employees from employee leasing companies) and section 468.529(1) (conferring employer status to employee leasing companies) is not irreconcilable. In Maxson Construction Company v. Welch, 720 So.2d 588 (Fla. 2d DCA 1998), Maxson hired the claimant and subsequently had him sign documents declaring him to be an employee of AMA, an employee leasing company which leased employees to Maxson and provided those employees workers' compensation benefits. Claimant was injured on a Maxson project and received workers' compensation benefits *604 through AMA. Claimant then brought an action in tort against Maxson. The court held that under section 468.529, claimant was an employee of the employee leasing company for workers' compensation purposes. In addition, the court held that Maxson was immune from tort liability under section 440.11(2), because, through the employee leasing arrangement, "the purpose of the workers' compensation law was served in accordance with statutory requirements, and [claimant was] not entitled to a second bite at the apple by suing Maxson in tort." Id. at 590. The Maxson court's reasoning supports the proposition that, in employee leasing arrangements, where the borrowing employer has secured workers' compensation through the leasing company, the borrowing employer retains special employer status (and the requisite immunity from tort liability), but the leased employee remains the employee of the employee leasing company. See also Folds v. J.A. Jones Constr. Co., 875 So.2d 700 (Fla. 1st DCA 2004). Where, however, the employee leasing company fails to provide coverage, workers' compensation liability attaches to the special employer. See Tu-Lane Invs., Inc. v. Orr, 889 So.2d 961, 963 (Fla. 1st DCA 2004).
Under the first factor of section 440.09(1), a claimant is entitled to compensation under chapter 440 "if the contract of employment was made in this state." "Where an employment contract was made is determined through a consideration of (1) the hiring authority of the person involved in employment negotiations with the claimant, and (2) the place of performance of the conditions of the proposed employment." Cleveland Consol., Inc. v. Haren, 672 So.2d 592, 593 (Fla. 1st DCA 1996)(quoting Nelson v. McAbee Constr., Inc., 591 So.2d 1015, 1016 (Fla. 1st DCA 1991)).
Claimant concedes that the employee leasing company, Labor Ready, was his employer, as reflected by ample evidence in the record. Claimant's wife unequivocally testified at the final hearing that appellant was a Labor Ready employee on the date of his accident. Labor Ready's Alabama branch manager confirmed this assertion, testifying that claimant was a Labor Ready employee from 2003 to 2005 during the Alabama contract, and that claimant's individual Labor Ready employment documentation was completed at the inception of the employment agreement between P & H and Labor Ready with the Alabama officials of Labor Ready entering into the employment documentation. Most compelling, however, in the pretrial stipulation, the parties stipulated that claimant's injury occurred at a time during which an employer/employee relationship existed between appellant and Labor Ready in Alabama.
We agree with the JCC that for the purposes of section 440.09(1)(d) the relevant employment agreement here is the contract between claimant and Labor Ready, not the employee leasing agreement between P & H and Labor Ready. The contract between P & H and Labor Ready is not an employment agreement, but an agreement by which claimant could enter into his employment agreement with Labor Ready. Further, the employment agreement between claimant and Labor Ready provides the necessary factual premise to affirm the JCC's determination that the employment contract was made in Alabama, not Florida. The record contains competent substantial evidence establishing that hiring authority over claimant's employment was localized in Alabama, and the place of performance of the conditions of claimant's proposed employment under the agreement was in Alabama. Because we conclude that competent *605 substantial evidence supports the finding that the contract at issue was made in Alabama, claimant has failed to satisfy the first factor of section 440.09(1)(d). Our attention turns to the second factor concerning the principal localization of claimant's employment.

Principal Localization of Claimant's Employment
We agree with the JCC that there is insufficient evidence in the record to establish that claimant's employment was principally localized in Florida. In determining jurisdiction under section 440.09(1)(d), the principal location of the claimant's employment, not of the employer's business, is the relevant consideration. Johnson v. United Airlines, 550 So.2d 134, 135 (Fla. 1st DCA 1989); General Elec. v. DeCubas, 504 So.2d 1276, 1277 (Fla. 1st DCA 1986).
In determining the principal locus of employment, this Court has looked to the overall temporal distribution of a claimant's employment engagement. For example, in DeCubas, claimant was a Florida resident who entered into an employment contract in Virginia with General Electric, a company based out of state. 504 So.2d at 1277. Though claimant was injured in Georgia, this Court found that the JCC had jurisdiction because claimant's employment was principally localized in Florida. This determination was premised on evidence showing that during his engagement with General Electric, claimant spent 73 percent of his time working in Florida, and 27 percent of his time working in Georgia. Id.
Although the temporal distribution of employment is a critical factor, it is not, itself, dispositive. In Johnson, claimant entered into an employment contract with United Airlines in Illinois. 550 So.2d at 134. Claimant was based in Florida throughout her employment and was primarily assigned to flights originating from and returning to Florida. Moreover, her work was supervised in Florida and she received her paychecks in Florida. Her flights, however, often included overnight layovers in other states. Id. at 135. The JCC held that claimant's employment was not principally localized in Florida, reasoning that the majority of claimant's actual flight time on a typical interstate flight was outside Florida airspace. Id. We reversed the JCC's ruling, holding that claimant's contacts with Florida were sufficient to establish principal localization of employment in Florida. Id.
In the instant case, claimant was employed by P & H when it commenced operations in 1978 and became an employee of Labor Ready in January 2003, at the inception of the P & H/Labor Ready employee leasing arrangement. Claimant and his wife began work at the Alabama job site in October 2003. Claimant's Alabama job continued until December 2004, at which time he was injured. Thus, claimant's employment with Labor Ready spanned approximately 24 months, no less than 13 of which were devoted to the Alabama project. The evidence below establishes that claimant worked exclusively in Alabama during this time. Although claimant's wife gave general testimony stating that, prior to the Alabama job, P & H used Labor Ready for other projects in several states, including Florida, and that she and claimant traveled to these jobs, there is no evidence in the record showing claimant's employment through Labor Ready on any of these projects. Further, other than this vague testimony of claimant's wife, there is no evidence in the record indicating that claimant was engaged in any project other than the Alabama project while he was an employee of Labor Ready from January 2003 to December 2004.
*606 Even if we utilized the entire period of 1978 through 2004, when claimant was employed by either P & H or Labor Ready, the record is silent as to the localization of claimant's employment prior to January 2003. Accordingly, we agree with the JCC that there is no competent substantial evidence establishing that claimant's employment was principally localized in Florida. In addition, we find competent substantial evidence to support the JCC's finding that his employment was localized in Alabama. Thus, we agree with the JCC's conclusion that claimant's employment was principally localized in Alabama.
AFFIRMED.
BROWNING, C.J., and WOLF, J., concur.