PER CURIAM.
This disciplinary proceeding by The Florida Bar against Marie S. Hotaling, a member of The Florida Bar, is presently before us on complaint of The Florida Bar and report of referee. Pursuant to Florida Bar Integration Rule, article XI, Rule 11.-06(9)(b), the referee’s report and record were duly filed with this Court. No petition for review pursuant to Florida Bar Integration Rule, article XI, Rule 11.09(1) has been filed.
Having considered the pleadings and evidence, the referee found as follows:
“1. Respondent, Marie S. Hotaling, is, and at all times hereinafter mentioned was, a member of The Florida Bar, subject to the jurisdiction and disciplinary rules of the Supreme Court of Florida.
“As to Count I:
“2. In or about March, 1982, Respondent was retained by members of the Tam-O-Shanter Condominium Association to represent them in certain actions.
“3. In or about March, 1982, Respondent asked Attorney John T. Carlon to accompany her to a meeting with the above clients.
“4. Attorney John T. Carlon was sharing office space with Respondent at this time and at all times relevant herein, as well as handling some legal matters for the Respondent in exchange for office space.
“5. Upon inquiry by her clients concerning payment of the two (2) attorneys, Respondent told her clients they would only be billed by the Respondent, as Attorney John T. Carlon was only her adviser as an expert in condominium law. Mr. Carlon confirmed at this meeting that he would be happy to assist Ms. Hotaling at no additional charge to the condominium association.
“6. Respondent told her clients that they would be billed at the rate of $75.00 an hour, such billing to be submitted only by Respondent, and that charges by Attorney John T. Carlon, if any, would be taken care of by Respondent. Respondent billed the condominium association client for said services and the bills were paid by the client.
“7. On or about March 10, 1982, a complaint was filed on behalf of the above clients, naming Respondent and Attorney John T. Carlon as counsel for Plaintiffs in the cause styled Karen Gaigelias, Virginia Dorfler and Felicia Atkinson, Plaintiffs, vs. Hale Pike, Robert Varela and Sherry Ste-phanowski, in the Circuit Court of the Seventeenth Judicial Circuit In and For Bro-ward County, Florida, Case No. 82-5003 CH.
“8. On March 24, 1983, John T. Carlon was granted a leave to withdraw as counsel for the above clients.
“9. On or about August 4, 1983, the Defendants in Case No. 82-5003 CH filed a Motion to Dismiss, said Motion being noticed for a hearing on November 1, 1983.
“10. On or about October 21, 1983, Respondent filed a Motion to Withdraw as Attorney for Plaintiffs in Case No. 82-5003 CH, said Motion being noticed for hearing on November 1, 1983.
“11. At the November 1, 1983 hearing, Judge Andrews denied Respondent’s Motion to Withdraw because of the Defendant’s pending Motion to Dismiss.
“12. At the November 1, 1983 hearing Judge Andrews heard the Defendant’s counsel’s argument on the Motion. Judge Andrews then requested the Respondent to respond to the Defendant’s Motion to Dismiss with Prejudice. Respondent refused to respond on behalf of her clients, leaving her clients unrepresented regarding said motion.
“13. On or about July 8, 1982, the condominium association received a bill from Mr. Carlon in the approximate amount of $1,250.00. The bill was turned over to the *823 Respondent, who advised not to worry, that she would take care of it.
“14. [0]n or about December, 1982, John T. Carlon sued the condominium association for attorney’s fees in connection with his representation of them in the above-referenced action.
“15. Respondent represented the condominium association regarding the law suit by Attorney John T. Carlon, despite a conflict of interest in that the Respondent and Mr. Carlon had a business and financial arrangement regarding clients and office space.
“16. Respondent did not notify or disclose to her client this conflict of interest nor was the clients’ consent obtained.
“17. Regarding his lawsuit for fees, Mr. Carlon obtained a Default Judgment against Respondent’s clients for attorney fees on April 5, 1983, because the Respondent did not appear on behalf of her clients at the final hearing, and failed to advise the condominium association of the date set for the hearing on Mr. Carlon’s lawsuit.
“18. During her representation of the condominium association, Respondent received and had access to privileged client information.
“19. Respondent received notice of the judgment against the condominium association, and notice of execution of judgment in suit, regarding Mr. Carlon’s lawsuit against them.
“20. The Respondent improperly informed Attorney John T. Carlon of the name of the clients’ condominium association bank. Attorney John T. Carlon was then able to execute a judgment lien on the condominium association’s funds.
“21. Respondent, through her secretary, advised the client condominium association to withdraw all funds from their bank in order to avoid the judgment execution by Mr. Carlon. The condominium associations’ bank account had already been attached by a Court Order.
“As to Count II:
“22. On or about May 29, 1984, Frank J. Nestrole and his wife, Carole, had an appointment and conference with the Respondent at her office regarding adoption proceedings to be brought on behalf of their daughter.
“23. At the end of the meeting, the Nestroles issued a check to the Respondent in the sum of $171.00, $71.00 representing a Court filing fee and the remaining $100.00 representing Respondent’s attorney fee.
“24. On or about May 30, 1984, Mr. Nestrole went to Respondent’s office and left documents the Respondent had requested, the Nestroles’ marriage license and their daughter’s birth certificate. During this visit, Respondent’s secretary made copies of said documents for Mr. Nestrole.
“25. On or about June 15,1984, Respondent advised the Nestroles that all the necessary papers were ready for their signature. The Respondent further advised that she would be out of town and requested the Nestroles to come to her office on Wednesday, June 20, 1984, at 4:00 o’clock p.m.
“26. When the Nestroles appeared at the appointed time, they were advised by Respondent’s secretary that the Respondent was still out of town.
“27. On Monday, June 25, 1984, the Nestroles placed a phone call to Respondent’s office and left a message on Respondent’s answering machine. The Nestroles did not receive a return phone call from the Respondent.
“28. On or about June 26, 1984, Mr. Nestrole went to the Respondent’s office regarding the adoption matter. At that time, Respondent advised Mr. Nestrole that she had been unable to prepare the necessary papers since he had failed to bring her the child’s birth certificate.
“29. At this June 26, 1984 meeting, Respondent advised that she would return $71.00 since the case had not been filed with the Court but would retain the remaining $100.00 for her time. Mr. Nes-trole left the Respondent’s office without receiving any of the monies he had paid.
*824 “30. The Nestroles have not received from the Respondent the documents left with her office, their marriage certificate and the child’s birth certificate.
“31. The Respondent has failed to take any action on behalf of the Nestroles and has failed to return the $171.00 she received.
“As to Count III:
“32. Respondent was retained by one Donna Haynes Alexander [o]n or about June 3, 1983, regarding representing Ms. Alexander in the case styled Cambridge Mutual Fire Insurance Company, Plaintiff, v. International Oho Investment, Inc., Donna Hayes Alexander, Rodger Dale, Jack and Patrick J. Alexander, Case No. 80-6557 CIV-JCP in the United States District Court for the Southern District of Florida, concerning a fire that destroyed Ms. Alexander’s home. Cambridge Mutual Fire Insurance Company was seeking to have the insurance policy on Ms. Alexander’s home declared null and void.
“33. At the time Ms. Alexander first contacted the Respondent, Respondent advised her that she had previously handled similar cases and had experience with Federal trials.
“34. Respondent did not have prior experience in handling cases of this nature.
“35. Respondent advised the Trial Court on January 18, 1984, that she had never handled a Federal Jury Trial before and was not prepared with questions for the prospective jurors.
“36. Respondent failed to take any depositions in the case, and did not conduct appropriate discovery proceedings.
“37. At the trial in this cause, Respondent failed to raise objections to evidentia-ry exhibits and testimony that warranted objections being raised.
“38. Respondent handled Ms. Alexander’s case while she knew or should have known that she was not competent to handle same. Respondent failed to associate or consult an attorney competent to handle the matter.
“39. Respondent did not conduct any study or preparation of the issues involved to become competent to handle Ms. Alexander’s case.
“40. Respondent handled Ms. Alexander’s legal matters without preparation adequate in the circumstances and neglected this matter entrusted to her.
“As to Count IV:
“41. [0]n or about November, 1982, Trayco, Incorporated, filed a lawsuit against Jack Leathers for injunctive relief and for damages for violations of a covenant not to compete involving the sale of plumbing parts by Mr. Leathers’ company, Fox Distributors, in the cause styled Tray-co, Inc., et al vs. Jack Douglas Leathers, Defendant, in the Circuit Court for the Fifteenth Judicial Circuit In and For Palm Beach County, Florida, Case No. 82-6357 CA(L) 01J.
“42. The Respondent was retained to represent Mr. Leathers in this action.
“43. The Respondent filed an Answer and Counterclaim on behalf of Mr. Leathers on or about April 1, 1983. Subsequently, an amended Counterclaim was filed.
“44. During the course of discovery, Trayco attempted several times to obtain the deposition of a witness, Mike Bass.
“45. The Respondent advised the witness, Mike Bass, not to appear for his deposition even though he had been subpoenaed for same.
“46. [0]n or about October, 1983, the Court granted a permanent injunction against Mr. Leathers and ruled that Trayco had a right to obtain attorney’s fees but reserved jurisdiction on the issue of attorney’s fees. Respondent failed to advise Mr. Leathers of this Court ruling.
“47. When Mr. Leathers inquired about the status of his case, the Respondent advised him that he had won the case and that the Judge erred in awarding attorney’s fees in favor of Trayco.
“48. On or about November 14, 1983, Respondent filed a Notice of Appeal on behalf of Mr. Leathers, but failed to deposit the required Appellate Court filing fee.
*825 “49. The Respondent failed to appear at the January 4, 1984, hearing in Circuit Court regarding the award of attorney’s fees and costs to Trayco.
“50. The Court found a complete absence of justifiable issues of either law or fact raised by Mr. Leathers and pursuant to Florida Statutes 57.105 ordered that Trayco recover from Mr. Leathers the sum of $9,340.15 for costs and reasonable attorney’s fees.
“51. The Respondent dismissed with prejudice Mr. Leather’s counterclaim without his authorization, consent, or knowledge.
“52. The Respondent failed to respond to Trayco’s Motion to Dismiss the Appeal. As a result, the appeal was dismissed by the Fourth District Court of Appeal on June 25, 1984.
“53. The Respondent misrepresented to her client that the appeal was still pending when in fact it had been dismissed.
“54. [0]n or about January, 1983, Mr. Leathers attempted to contact the Respondent concerning his appearance at trial.
“55. Mr. Leathers made approximately nineteen (19) telephone calls but failed to make contact with the Respondent.
“56. In a desperate attempt to contact the Respondent, Mr. Leathers “employed” his friend, Mike Bass, for $50.00 to wait in the parking lot of the Respondent’s office for her arrival and to have Mr. Bass then call Mr. Leathers collect and place the Respondent on the phone. Mr. Bass put the Respondent on the phone and she advised Mr. Leathers need not attend said hearing.
“57. After learning that the award of attorney’s fees had been affirmed, Mr. Leathers made numerous attempts to contact the Respondent by telephone over a period of twelve (12) days. The Respondent failed to respond to Mr. Leather’s phone calls and messages.
“58. In addition, the Respondent made herself inaccessible to opposing counsel, Alan Pollack, by failing to respond to Mr. Pollack's phone calls and messages.
“59. On one occasion, Mr. Pollack went to the Respondent’s office and observed that the phone was off the hook.”
The referee recommends that respondent be found guilty of violation of Florida Bar Integration Rule, article XI, Rule 11.-02(3)(a) and Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(4), 4-101(B)(l) and (2), 5-101(A), and 6-101(A)(3) as to Count I; Florida Bar Code of Professional Responsibility, Disciplinary Rules 2-106, 6-101(A)(3) and 9-102(B)(4) as to Count II; Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(4), 6-101(A)(l), and 6-101(A)(2) and (3) as to Count III; and Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(4) and (5), 2-109(A)(2), 6-101(A)(1), (2) and (3), 7-101(A)(l), (2) and (3), and 7-102(A)(l) as to Count IV and recommends that respondent be disbarred from the practice of law in Florida and only be readmitted pursuant to the rules governing readmittance, including the taking and passing of the complete Florida Bar Exam.
Having carefully reviewed the record, we approve the findings and recommendations of the referee.
Accordingly, respondent, Marie S. Hotal-ing is hereby disbarred from the practice of law in the State of Florida immediately.
Judgment for costs in the amount of $1,816.17 is hereby entered against respondent, for which sum let execution issue.
It is so ordered.
ADKINS, Acting C.J., and OVERTON, McDonald, EHRLICH and SHAW, JJ., concur.