PER CURIAM.
In this workers’ compensation case, Claimant appeals an order of the Judge of Compensation Claims (JCC) that denies compensability of his motor vehicle accident and resulting injuries on the basis that Claimant was not an employee at the time of the motor vehicle accident. Because we conclude that Claimant was an “employee” as the term is defined in section 440.02(15)(a), Florida Statutes (2010), we reverse.
Background
On May 21, 2011, Claimant, a licensed truck driver, was contacted by Walt Ring-dahl, a recruiter for the Employer[1], regarding a truck driving position. Mr. Ringdahl obtained Claimant’s general information such as his name, address, date of birth, social security number, and work history. Thereafter, Mr. Ringdahl requested Claimant to attend the Employer’s two-day orientation at the Employer’s fa *1219 cility. Claimant delayed the orientation date for two to three weeks to provide adequate notice of his resignation to his (then) current employer. Claimant’s orientation was scheduled for June 22 and 28, 2011.
On June 21, 2011, Claimant and his family traveled from Claimant’s home in Mims, Florida, to Auburndale, Florida, to attend orientation. The Employer provided lodging, lunch, and transportation during the two-day orientation. On June 22, 2011, Claimant underwent a physical examination, which he successfully completed, and a drug test, the results of which were expected by the end of orientation. After Claimant signed for his picture identification badge, Mr. Ringdahl transported the recruits to and from lunch.
The same day, Claimant completed the Employer’s checklist, titled “Prospective Bynum Drivers,” which states, “This is not an offer of employment and should not be viewed as such”; Mr. Ringdahl instructed Claimant to date the checklist for the following day, June 23, 2011, the “official” date of hire. Claimant also signed a document titled “Orientation Pay” which stated that “all new drivers would receive $50 per day upon successful completion of orientation.”
On June 28, 2011, Claimant received his picture identification badge. Because recruits were expected to depart from the Employer’s facility for the first trip immediately following the second day of orientation, Claimant’s wife delivered his provisions for the trip to the Employer’s facility. Claimant got into his automobile with his wife to follow Mr. Ringdahl to the restaurant for lunch. On the way to lunch, Claimant was involved in a motor vehicle accident.
Thereafter, Claimant underwent a truck driving test, which he successfully completed. At the end of the second day of orientation, Claimant received the keys to his assigned truck and set out on his first trip. Although Claimant completed one trip for the Employer, he did not thereafter perform work.
On July 8, 2011, Claimant received a “Bynum Transport, Inc. Settlement Detail Sheet” which indicated that Claimant was paid “Orientation Pay” in the amount of $100 for Claimant’s participation and completion of orientation. Under “Additional Wages,” the document classified Claimant’s orientation pay as “SAL.” The settlement sheet further listed Claimant’s reimbursements for expenses, cash advances, deductions for supplies, and taxes withheld by the Employer.
On July 22, 2011, Claimant filed a petition for benefits (PFB) seeking compensa-bility of the injuries sustained in the motor vehicle accident which occurred on the second day of orientation. The Employer/Carrier (E/C) denied the claim on the basis that Claimant was not an employee at the time of the accident. At the merits hearing, Claimant testified that it was his understanding that he was hired before he left for Auburndale because the Employer had completed the background investigation, knew who Claimant was, invited Claimant to travel to orientation, and covered his lodging expenses. Claimant also testified that he would not have left his previous employment of six years on a “maybe.” Claimant further testified that he requested his trip “essentials” from his wife before the accident because he knew he was going to leave for his first trip following orientation. Claimant argued the $50 per-day orientation pay constituted wages and is evidence that Claimant’s employment began June 22, 2011.
At trial, the E/C maintained that a contract for employment had not been formed with Claimant and offered testimony from *1220 Gary Brinkley, safety director for the Employer. Brinkley described Claimant’s online application as an “internet inquiry” and testified that it was not an offer of employment. Mr. Brinkley testified that background information is collected during the online process, and the Employer would not have invited Claimant to attend orientation or pay his lodging expenses if disqualifying information had been disclosed. Mr. Brinkley further testified that the Employer conducts weekly orientations and pays lodging and lunch expenses for prospective drivers because “most employees do not have money to pay for their facilities.” He stated that prospective drivers are paid $50 per day upon successful completion of the two-day orientation as a starter fund intended to give new drivers money to start out with on the road. He acknowledged that Claimant received the money with his first pay check and not on the last day of orientation, but stated Claimant could have requested the money earlier if he needed it.
Regarding the hiring process, Mr. Brinkley testified that prospective drivers cannot become employees until orientation is completed. He stated the Employer uses the orientation process to complete any unfinished background investigations. He testified that Claimant would not have been hired if he had not passed the background investigation, physical examination, drug test, and driving test. He further testified that prospective drivers receive an identification badge when they have been officially hired and that Claimant was officially hired at the time he received his identification badge between 4:30 p.m. and 5:00 p.m. on June 23, 2011 — approximately four hours after the automobile accident.
Mr. Brinkley testified that he handles all of the Employer’s workers’ compensation claims, and that workers’ compensation benefits had been provided to other prospective drivers who had been injured during orientation.
In the final order, the JCC found that Claimant was not an employee at the time of his accident, and therefore the accident was not compensable. The JCC explained:
The claimant was aware that he had to pass a drug test in order to be hired. He was told by Walt [Ringdahl] that he should not date the check list for the first day as he would not be hired until the second day. The claimant testified that he knew he could leave at any time and that several of the recruits did leave during or after the first day. He testified that he considered himself to be hired because he knew he could pass the drug test, physical examination and driver test. However, the employer did not know that claimant could pass these tests and did advise the claimant that he would not be hired until he successfully completed the orientation process. The claimant argues that the payment of the $50.00 per day was wages and is evidence that he had been hired. However, the paperwork he signed clearly indicates that these payments would not be made unless the orientation was successfully completed. Wages are defined as the money rate at which the service rendered is recompensed. It is undisputed that the monies paid for the first two days were a flat rate, different from the wage ultimately offered to and accepted by claimant. In addition the claimant would only receive this flat rate if he successfully completed the orientation. If he did not successfully complete the orientation he would not be given the flat rate. However, had he been working for those two days he would have been entitled to his wages for the time he was there, whether or not he successfully completed the orientation period.
*1221 Ultimately, the JCC found that because Claimant’s physical, drug test, and driver’s test “had not been completed or results received by the Employer,” there had not been an unequivocal offer of employment. Consequently, the JCC denied all claims for compensation under chapter 440, and dismissed all remaining petitions. This appeal followed.
Analysis
The status of an employment relationship can be determined as a matter of law. Phillips v. Unicare Amelia Island, Inc., 458 So.2d 50, 52 (Fla. 1st DCA 1984) (citing Sosa v. Knight-Ridder Newspapers, Inc., 485 So.2d 821, 826 (Fla.1983)). The issue presented here involves a legal issue of first impression: whether an individual injured during a mandatory orientation session is deemed an employee, such that he is subject to the Workers’ Compensation Law. Although this court has established that former employees may be subject to the Law for injuries sustained after the contract of employment has terminated, it has not similarly addressed whether individuals undergoing training or orientation sessions mandated by an employer are covered. See Phillips, 458 So.2d at 52 (holding former employee was employee as of date of her accident despite fact that she had quit work two weeks before she was injured, where her supervisor stated that date she picked up her check and was injured was earliest date available for her to pick up her paycheck) (citing 1A Arthur Larson, The Law of Workmen’s Compensation, § 26.03[1]) (stating that course and scope extends to collecting pay, unless undue delay is shown).
Section 440.02(15)(a), Florida Statutes (2010), defines “employee” as:
... any person who receives remuneration from an employer for the performance of any work or service while engaged in any employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written ...
This broad language reflects the intent of the Legislature to afford expansive coverage under the Florida workers’ compensation scheme, subject only to narrow exceptions. Hazealeferiou v. Labor Ready, 947 So.2d 599, 604 (Fla. 1st DCA 2007).
The general rule is that there is no entitlement to workers’ compensation benefits before hiring. 1A Arthur Larson, The Law of Workmen’s Compensation § 26.02 (2012). Florida law requires that for a person to be considered an employee for workers’ compensation purposes, a contract of employment, either express or implied, must exist. Jurisdictions that permit a conclusion that injuries sustained during a period of pre-employment are compensable base such a conclusion on the fact that in such jurisdictions, a formal employment contract is not necessary to establish an employment relationship covered by workers’ compensation. Dodson v. Workers’ Comp. Div., 210 W.Va. 636, 558 S.E.2d 635 (2001). Claimant argues this court should adopt the holding of the Tennessee Supreme Court in Hubble v. Dyer Nursing Home, 188 S.W.3d 525, 528 (Tenn.2006). In Hubble, a claimant required to attend a three-day orientation session before reporting to work as a nursing home hostess was injured in an automobile accident while driving to the orientation facility on the third day. Id. at 530. The employer asserted the claimant was not an “employee” because a prospective hostess was not allowed to work at the nursing home until the three-day orientation was completed and therefore could not be an employee until he or she actually came to work at the nursing home. Id. The Hubble court found the claimant was an “employee” for compensation purposes where the claimant was required to attend *1222 the orientation session prior to starting the position, the claimant was to be paid for attending the orientation, and orientation was not part of the application process in the way that a test or physical examination would be part of the application process. Id. at 533.
Here, it is undisputed that a formal, written contract of employment had not been created at the time of Claimant’s motor vehicle accident. Notwithstanding, under the rationale employed by the Hubble court, Claimant would be deemed an “employee” retroactively to the first day of orientation, such that Claimant is subject to the Workers’ Compensation Law, considering the following: Claimant was required to attend orientation prior to starting the first assignment as a truck driver; the Employer provided travel pay for lodging expenses incurred during the two-day orientation period; the Employer exerted control during the two-day orientation period, evidenced by its commandeering of Claimant’s transportation throughout the orientation period (the Employer’s representative transported Claimant to and from the Employer’s facility throughout the orientation period); the orientation was not part of the application process and took place upon completion of the application process; and significantly, according to the E/C’s payroll records, Claimant was paid a salary for attending orientation. Additionally, evidence established that this Employer had covered injuries of those individuals who were undergoing the same type of orientation that occasioned Claimant’s injuries — meaning the Employer was not of the mindset that absolutely no employer/employee relationship was being forged through the compensated activities of orientation. That the Employer — after the fact — characterized the salary Claimant received for orientation time as an advance and not really wages, is of no import; the Employer could have issued Claimant a different form of payment for his orientation time, but elected to pay Claimant wages for attending orientation instead — further indicating that the Employer was of the mindset that some form of employer/employee relationship was being forged through the activities of orientation.
Because the written documentation created by the Employer indicates that — consistent with Claimant’s own understanding of his relationship with the Employer— Claimant was hired as of the first day of orientation by operation of salary paid for attending orientation, Claimant was an “employee” for workers’ compensation purposes at the time of the motor vehicle accident. Accordingly, the order on appeal should be REVERSED and REMANDED for entry of an order consistent with this opinion.
PADOVANO and CLARK, JJ., concur; and THOMAS, J., dissents with opinion.

. Claimant had previously submitted an online application for employment to the Employer.