IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

ARENA FOOTBALL LEAGUE
and ARENA FOOTBALL ONE,
LLC,

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

      Appellants,

CASE NO. 1D15-5130

v.

BRYON BISHOP,

      Appellee.

_____/

Opinion filed June 6, 2017.

An appeal from an order of the Judge of Compensation Claims.
Thomas W. Sculco, Judge.

Date of Accident: July 31, 2013.

Meredith A. Chaiken of Tenberg Chaiken, Lighthouse Point, for Appellants.

Charles H. Leo of the Law Offices of Charles H. Leo, PA, Orlando, and Richard W. Ervin III, of Fox & Loquasto, PA, Tallahassee, for Appellee.


WINSOR, J.

      Bryon Bishop once played for the Orlando Predators in the Arena Football

League ("AFL"). Although he and the team parted ways after just one season, Bishop

later participated in a Predators tryout, hoping to resume his professional football

career. On the second day of the two-day tryout, Bishop suffered an on-the-field injury. The issue in this case is whether the AFL must provide workers' compensation benefits for that injury.[1]

Bishop's entitlement to benefits turns on whether he was an AFL employee, which turns on what we make of the "Standard Player Contract" that Bishop signed (the "Contract"). A claimant does not always need a formal employment contract to receive workers' compensation benefits, of course, *see, e.g.*, *Jenks v. Bynum Transp., Inc.*, 104 So. 3d 1217, 1222 (Fla. 1st DCA 2012), but the parties agree that Bishop's claim depends on this Contract.

Bishop contends the Contract shows he was an AFL employee; the AFL contends just the opposite.[2] The judge of compensation claims sided with Bishop, and the AFL appeals. Because the decision below turned on issues of law, our review

---

[1] Bishop actually suffered two separate injuries—one on each day of the two-day tryout. The judge of compensation claims rejected Bishop's claim related to the first day's injury, and Bishop has not challenged that ruling. We therefore do not consider that injury. Nor do we consider section 440.02(17)(c)(3), Florida Statutes (2013), which excludes professional athletes from workers' compensation coverage. For reasons not pertinent here, the judge of compensation claims found that provision inapplicable, and no one has challenged that decision on appeal.

[2] Unlike in the National Football League, in which individual team organizations employ their own players, *see National Football League*, Wikipedia, https://en.wikipedia.org/wiki/National_Football_League (last visited May 17, 2017) [https://perma.cc/D5L6-XG4C], in the AFL, every player is a league employee. Indeed, the Contract provides that "both the Player and the League verify and certify that this Contract is only between the Player and the League, and not between the Player and his assigned team."

is de novo. *See BOLD MLP, LLC v. Smith*, 201 So. 3d 1261, 1261 (Fla. 1st DCA 2016); *see also Bend v. Shamrock Servs.*, 59 So. 3d 153, 156 (Fla. 1st DCA 2011) (noting that JCCs "may be required to interpret contracts" to determine coverage).

The Contract says that "[t]he League hires the Player as a skilled football player for employment beginning February 1, 2013 and ending August 31, 2013." It has three signature lines: one for "Player Signature," one labeled "Team Rep. Acknowledgement (Mandatory)," and one for "League Signature." Bishop signed on the "Player Signature" line, and the Orlando Predators' coach signed on the "Team Rep. Acknowledgement." But the "League Signature" line remained blank. So was there a contract or wasn't there?

Bishop offers several arguments as to why we should find there was an agreement, notwithstanding the missing signature. One argument is that no AFL signature was required because the Contract itself does not say signatures are required. This argument cannot succeed; a contract cannot be enforceable against a nonsignatory simply because it does not expressly provide that signatures are required. *Cf. D.L. Peoples Grp., Inc. v. Hawley*, 804 So. 2d 561, 563 (Fla. 1st DCA 2002) ("Where one contracting party signs the contract, and the other party accepts and signs the contract, a binding contract results."). A contract requires mutual assent, *Gibson v. Courtois*, 539 So. 2d 459, 460 (Fla. 1989), and a form contract that

provides it is between two parties,[3] that includes a signature line for both parties, and that has only one party's signature cannot—without more—demonstrate mutual assent.

Bishop points to language in the Contract that provides a mechanism for the AFL to unilaterally cancel the contract after its execution. The Contract says that "after execution," the Contract will be filed with the AFL headquarters. The AFL's Director of Football Operations then has "the right to disapprove this Contract" for various reasons. If the Director exercises that right, "both parties will be relieved of their respective rights and obligations under this Contract." The Contract further provides that absent "disapproval" within seven days, approval is automatic.

No one from the AFL ever gave notice that the Contract was "disapproved." But notwithstanding Bishop's arguments, this does not mean the Contract was automatically approved—or that a binding agreement was formed. If the Contract had been executed, those provisions would have allowed the AFL to terminate the agreement, but that does not help us decide whether the Contract was executed in the first place. If it was not, the Contract's "disapproval" provisions never came into play. Indeed, if there was never mutual assent—evidenced by signatures or otherwise—then those provisions, like all the Contract's provisions, mean nothing.

---

[3] The first sentence of the Contract makes clear that it is between two parties: the AFL and Bishop.

Bishop also suggests that the AFL could assent to the Contract without signing it. It is true that parties may show assent through means other than signatures. *Gateway Cable T.V., Inc. v. Vikoa Constr. Corp.*, 253 So. 2d 461, 463 (Fla. 1st DCA 1971) ("The object of a signature is to show mutuality or assent, but these facts may be shown in other ways, for example, by the acts or conduct of the parties."). But in this case, the only AFL action Bishop claims showed the AFL's assent was the AFL's decision to let Bishop participate in the tryout. We cannot conclude that allowing a player to participate in a tryout shows assent to "hire[] the Player as a skilled football player" for the duration of a football season.

The JCC's conclusion below—that Bishop "was under contract with [the AFL] at the time of his alleged injury"—was incorrect. Accordingly, and because there was no employer-employee relationship on the date of the injury, we reverse and remand for entry of an order denying Bishop's claims.

REVERSED and REMANDED.

WINOKUR and JAY, JJ., concur.